UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 12-1128

LOGAN & KANAWHA COAL CO., LLC, a West Virginia limited
liability company,

Plaintiff – Appellant,

v.

DETHERAGE COAL SALES, LLC, a Kentucky limited liability
company,

Defendant – Appellee.

Appeal from the United States District Court for the Southern
District of West Virginia, at Charleston. Joseph R. Goodwin,
District Judge. (2:11-cv-00342)

Argued: February 1, 2013            Decided: March 21, 2013

Before NIEMEYER, DUNCAN, and DIAZ, Circuit Judges.

Reversed and remanded by unpublished opinion. Judge Diaz wrote
the opinion, in which Judge Niemeyer and Judge Duncan joined.

**ARGUED:** Rodney Arthur Smith, BAILEY & GLASSER, LLP, Charleston,
West Virginia, for Appellant. D. Duane Cook, DUANE COOK &
ASSOCIATES, PLC, Georgetown, Kentucky, for Appellee. **ON BRIEF:**
Brian A. Glasser, BAILEY & GLASSER, LLP, Charleston, West
Virginia, for Appellant. Edward E. Bagnell, Jr., SPOTTS FAIN,
PC, Richmond, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

DIAZ, Circuit Judge:

Logan & Kanawha Coal Co., LLC ("L&K") appeals a district court order vacating an arbitration award entered in its favor. The district court vacated the award after concluding that the parties had not agreed to arbitrate their dispute. Because we conclude that the parties' contract incorporated an arbitration clause by reference, we reverse and remand with instructions to confirm the arbitration panel's award.

I.

On March 9, 2010, L&K faxed a purchase order draft to Bill Detherage, the sole member and operator of Detherage Coal Sales, LLC ("DCS"), proposing to purchase 10,000 tons per month of Alma Seam coal from DCS over the six months from April to September 2010. The fax cover sheet stated in handwriting that the fax consisted of two pages and included with the cover sheet a one-page purchase order, which stated that "ALL TERMS & CONDITIONS ON THE FOLLOWING PAGES ARE INTO [sic] AND MADE A PART OF THIS CONTRACT." J.A. 24. In fact, no "following pages" were attached to the fax. That same day, DCS lined out the quantity term, changing 10,000 tons per month to 7,000 tons per month, signed the purchase order, and sent it back to L&K. On March 15, 2010, L&K returned the signed purchase order ("the Contract") to DCS, writing "we have a deal." J.A. 78. The

2

Contract retained the above-quoted notice, but again included no "following pages" containing the referenced terms and conditions.

DCS never informed L&K that it had not received the terms and conditions referenced on the purchase order and made no inquiry about them. Detherage, however, had previously conducted business with L&K through other entities he owned and/or operated, and had personally received L&K's terms and conditions on at least four occasions prior to DCS entering the Contract. Each of these sets of previously received terms and conditions, despite some minor variations--including the label change from "General" terms and conditions to "Standard"--contained an identical arbitration provision directing that contract disputes be resolved pursuant to the rules and practices of the American Arbitration Association ("AAA").

No coal was delivered in April, as DCS informed L&K that it was having production difficulties. Concerned at this news, an L&K representative visited DCS's mine in late April and found that there was indeed coal being mined and shipped, but that it was all going to another customer. On May 11, 2010, L&K sent a letter demanding assurance of performance. The letter included a copy of the Contract as well as a copy of L&K's "Standard" terms and conditions, which contained the arbitration clause. DCS (through its attorney) responded in writing that it had

3

thirty days to address L&K's demand, but it did not object to the applicability of L&K's Standard terms and conditions. DCS thereafter delivered only a small fraction of the promised coal by the date of performance.

On December 21, 2010, L&K filed a demand for arbitration with the AAA, claiming that DCS had breached the Contract and that the applicable "Standard" terms and conditions included a requirement that the dispute be arbitrated. DCS subsequently designated an arbitrator while reserving its right to contest arbitrability.

The AAA held an arbitration hearing to address whether the dispute was arbitrable, whether DCS had breached the Contract, and whether L&K had suffered damages resulting from that breach. DCS did not appear at that hearing but filed a motion to dismiss, arguing that it had never agreed to the arbitration. The arbitration panel, over the dissent of DCS's designated arbitrator, found that DCS had agreed to arbitrate the dispute and issued an award in L&K's favor of approximately $2.7 million.

L&K subsequently filed in federal court a "Motion to Confirm Arbitration Award"; DCS filed a "Motion to Vacate Arbitration Award." The district court held in favor of DCS and vacated the arbitration award. This appeal followed.

## II.

The issues before us are (1) whether L&K's arbitration clause was a term of the Contract; and (2) whether, if we find that the clause was a term of the Contract, the arbitrators' award should be affirmed. We review legal rulings made by the district court de novo and its factual findings for clear error. See Raymond James Fin. Servs., Inc. v. Bishop, 596 F.3d 183, 190 (4th Cir. 2010).

### A.

We first consider whether, under West Virginia law,[1] the Contract incorporated by reference the arbitration clause in L&K's "Standard" terms and conditions. Although this coal contract is governed by the Uniform Commercial Code ("UCC"), W. Va. Code § 46-1-101 et seq., the UCC contains no provision that speaks squarely to whether a secondary document referenced in a contract is incorporated by that reference. Generally, if the UCC is silent on a particular question, the common law controls. See W. Va. Code § 46-1-103(b). The Supreme Court of Appeals of West Virginia has recognized that separate writings may be incorporated by reference into a contract, see Art's Flower Shop, Inc. v. Chesapeake & Potomac Tel. Co. of W. Va., Inc., 413

---

[1] The parties do not dispute that the substantive law of West Virginia applies.

S.E.2d 670, 673-74 (W. Va. 1991), but has not, as far as we can tell, articulated the requirements for effective incorporation by reference. Accordingly, we must attempt to discern how that court would rule on the question, minding not to "create or expand [the] State's public policy." Talkington v. Atria Reclamelucifers Fabrieken BV, 152 F.3d 254, 260 (4th Cir. 1998) (quoting St. Paul Fire & Marine Ins. Co. v. Jacobson, 48 F.3d 778, 783 (4th Cir. 1995)). We therefore consider general principles of common law incorporation by reference.

"Incorporation by reference is proper where the underlying contract makes clear reference to a separate document, the identity of the separate document may be ascertained, and incorporation of the document will not result in surprise or hardship." Standard Bent Glass Corp. v. Glassrobots Oy, 333 F.3d 440, 447 (3d Cir. 2003); see also 11 Williston on Contracts § 30:25 (4th ed. 2011). Although it must be clear that the parties to the agreement had knowledge of and assented to the incorporated terms, Williston on Contracts § 30:25, the party challenging incorporation need not have actually received the incorporated terms in order to be bound by them, especially when both parties are sophisticated business entities. See Standard Bent Glass, 333 F.3d at 447 n.10.

By the same token, "[i]t is appropriate to require a merchant to exercise a level of diligence that might not be

6

appropriate to expect of a non-merchant." Id.; see also id. at 448 ("Standard Bent Glass should have advised Glassrobots it had not received [the referenced document], if that were the case. Its failure to object to the arbitration terms of [the referenced document], absent surprise or hardship, makes those terms part of the contractual agreement."). And where the parties are familiar with the secondary document at issue due to an ongoing business relationship or course of dealing, incorporation may be easier. See Stedor Enters., Ltd. v. Armatex, Inc., 947 F.2d 727, 733 (4th Cir. 1991) ("Where, as here, a manufacturer has a well established custom of sending purchase order confirmations containing an arbitration clause, a buyer who has made numerous purchases over a period of time, receiving in each instance a standard confirmation form which it either signed and returned or retained without objection, is bound by the arbitration provision." (internal quotations omitted)).

The district court held that L&K's arbitration clause was not incorporated into the Contract by reference because it had not been "clearly referenced" and "identified in such terms that its identity may be ascertained beyond doubt." Logan & Kanawha Coal Co. v. Detherage Coal Sales, LLC, 841 F. Supp. 2d 955, 961 (S.D. W. Va. 2012) (internal quotations omitted). This was because L&K used two sets of terms and conditions--"Standard"

7

and "General"--neither of which was specifically referenced by the notice in the purchase order, which referred only to "ALL TERMS & CONDITIONS ON THE FOLLOWING PAGES." "Because the statement does not distinguish between [L&K's] general and standard terms and conditions," the district court explained, "it is not clear which document the statement seeks to incorporate." Id. The court thus determined that the Contract, lacking sufficiently clear reference to either specific set of terms and conditions, did not incorporate the arbitration clause.

DCS echoes this reasoning, acknowledging that only two versions of L&K's terms and conditions existed, Appellee's Br. at 8-9, while maintaining that it was impossible to determine which of those two versions the Contract referenced. DCS further explains that because the Contract contained no "following pages," it understood the reference to governing "terms and conditions" to be mere "boilerplate . . . which had no effect on the transaction." Id. at 8. Finally, DCS maintains that a course of dealings analysis is inappropriate since Bill Detherage's personal knowledge of the arbitration clause, derived from his prior dealings with L&K, should not be imputed to DCS. Id. (citing Phoenix Sav. & Loan, Inc. v. Aetna Cas. & Sur. Co., 381 F.2d 245, 250 (4th Cir. 1967) ("The general rule is that the knowledge of an officer of the corporation

8

obtained while acting outside the scope of his official duties . . . is not, merely because of his office, to be imputed to the corporation.")).

We disagree with DCS and the district court, and hold that the requirements of incorporation by reference are satisfied.

First, by referring to "ALL TERMS & CONDITIONS ON THE FOLLOWING PAGES," the Contract makes clear reference to a second document: the terms and conditions on the following pages. The fact that the Contract actually appended no following pages is of little moment since the party challenging incorporation need not have actually received the incorporated terms in order to be bound by them, especially where, as here, it is a sophisticated business entity. Standard Bent Glass, 333 F.3d at 447 n.10.

Second, we conclude that the identity of the secondary document was sufficiently ascertainable despite the existence of two slightly different sets of terms and conditions, neither of which the Contract explicitly referenced. Even if the two different versions of L&K's terms and conditions could have created some uncertainty about which set applied, DCS can hardly claim to have been legitimately confused about the applicability of the arbitration clause, since both versions contained the same arbitration provision. Consequently, the arbitration clause was entirely ascertainable to DCS, notwithstanding other minor and immaterial differences between the two sets of terms

9

and conditions. In any case, if DCS was truly confused about which set of terms and conditions applied, it had a duty as a seasoned merchant to affirmatively seek clarification on that point rather than blindly assume the language to be ineffectual boilerplate.

Third, the parties' course of dealings allays any concern that incorporation will result in surprise or hardship to DCS. Although DCS has not itself previously done business with L&K, its sole owner and member, through negotiations for his other entities, has personally received L&K's terms and conditions-- always containing the same arbitration provision--on at least four prior occasions. DCS is correct that in Phoenix Savings and Loan, we set forth a general rule that the knowledge of corporate officers should not be imputed to their corporations. 381 F.2d at 250. However, DCS's brief misleadingly omits the clear limiting principle articulated in that same case: that where, as here, an officer has "substantial control of all activities of a corporation," his outside knowledge "ordinarily . . . is imputed to the corporation." Id. (emphasis added). Once we impute Detherage's familiarity with L&K's arbitration clause to DCS, there is no viable claim of hardship or surprise. See Stedor Enters., 947 F.2d at 733. Moreover, even if we put aside Detherage's imputed knowledge, DCS's claim of surprise is undercut by the fact that when L&K appended its

"Standard" terms and conditions to its May 2010 demand for assurances, DCS raised no objection to their applicability before beginning performance.

Since we find that the requirements of incorporation by reference are satisfied, we hold that the arbitration panel correctly found the dispute to be arbitrable and that the district court reversibly erred in concluding otherwise.

## B.

Having found the dispute arbitrable, we next consider DCS's argument that we should nevertheless vacate the arbitration award and return the parties to arbitration rather than order the district court to reinstate the award on remand. DCS urges that this result is necessary because a judicial determination regarding arbitrability needed to occur before the arbitration proceeded to the merits.

Not so. Contrary to DCS's thinly supported assertion that a "majority of courts" require a judicial determination of arbitrability before arbitration can take place, Appellee's Br. at 21, our review of the case law reveals no such prevailing requirement. As one of our sister circuits put it, "[w]e see no reason why arbitrability must be decided by a court before an arbitration award can be made." Nat'l Ass'n of Broad. Emps. & Technicians v. Am. Broad. Co., 140 F.3d 459, 462 (2d Cir. 1998). Of course, "[i]f the party opposing arbitration desires that

11

order of proceedings, it can ask a court to enjoin arbitration on the ground that the underlying dispute is not arbitrable." Id. As DCS did here, the party can also challenge arbitrability after the award has been entered. "If arbitrability is rejected after the award, the party opposing arbitration will have obtained the relief sought. If arbitrability is upheld after the award, there is no reason for a court not to confirm the arbitrator's award." Id.

Here, despite having had the right to seek an injunction and request a prior judicial determination of arbitrability, DCS chose not to take that step. Instead, it submitted the issue to the arbitration panel, resolved to challenge a potentially adverse arbitrability determination collaterally in court, and failed to advance any arguments on the merits of the contract dispute. Now, having affirmed the panel's arbitrability determination, we see no reason not to confirm its award. Indeed, to rule otherwise would give DCS a second and undeserved bite at the arbitration apple.

## III.

For the foregoing reasons, we reverse the judgment of the district court and remand with instructions to confirm L&K's arbitration award.

REVERSED AND REMANDED