IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2016 Term

FILED
November 14, 2016
released at 3:00 p.m.
RORY L. PERRY, II CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 15-0920

G & G BUILDERS, INC.,
Plaintiff Below, Petitioner

v.

RANDIE GAIL LAWSON AND DEANNA DAWN LAWSON,
Defendants Below, Respondents

Appeal from the Circuit Court of Cabell County
Honorable F. Jane Hustead, Judge
Action No. 14-C-250

AFFIRMED AND REMANDED

Submitted: November 1, 2016
Filed: November 14, 2016

Robert H. Sweeney, Jr., Esq.
Stephen F. Soltis, Esq.
Jenkins Fenstermaker, PLLC
Huntington, West Virginia

Mary K. Prim, Esq.
Mary K. Prim, PLLC
Scott Depot, West Virginia
Counsel for Petitioner

Marvin W. Masters, Esq.
Kimberly K. Parmer, Esq.
The Masters Law Firm LC
Charleston, West Virginia
Counsel for Respondents

JUSTICE LOUGHRY delivered the Opinion of the Court.

**SYLLABUS BY THE COURT**

1.  "An order denying a motion to compel arbitration is an interlocutory ruling which is subject to immediate appeal under the collateral order doctrine."  Syl. Pt. 1, *Credit Acceptance Corp. v. Front*, 231 W.Va. 518, 745 S.E.2d 556 (2013).

2.  "In the law of contracts, parties may incorporate by reference separate writings together into one agreement.  However, a general reference in one writing to another document is not sufficient to incorporate that other document into a final agreement.  To uphold the validity of terms in a document incorporated by reference, (1) the writing must make a clear reference to the other document so that the parties' assent to the reference is unmistakable; (2) the writing must describe the other document in such terms that its identity may be ascertained beyond doubt; and (3) it must be certain that the parties to the agreement had knowledge of and assented to the incorporated document so that the incorporation will not result in surprise or hardship."  Syl. Pt. 2, *State ex rel. U-Haul Co. v. Zakaib*, 232 W.Va. 432, 752 S.E.2d 586 (2013).

LOUGHRY, Justice:

The petitioner, G & G Builders, Inc., appeals the circuit court's order entered on August 20, 2015, through which it denied the petitioner's motion to dismiss the counterclaim filed by the respondents, Randie Gail Lawson and his wife, Deanna Dawn Lawson, and to compel arbitration in this litigation arising out of the construction of the Lawsons' home. The petitioner contends the circuit court erred when it found the arbitration provisions were not binding upon Mr. Lawson because they were set forth in a document that was never provided to Mr. Lawson, nor were they binding upon Mrs. Lawson, who was a non-signatory to the construction agreement. Upon our careful review of the parties' briefs, the arguments of counsel, the appendix record submitted, and the applicable law, we affirm the circuit court's ruling and remand this action to the circuit court for further proceedings consistent with this opinion.

## I. Facts and Procedural Background

On November 18, 2010, the petitioner's representative visited the construction site of the respondents' home and presented the respondent, Randie Lawson, with a twelve-page American Institute of Architects (AIA) Document A111-1997 form agreement

1

("Agreement").[1] Both the petitioner's representative and Mr. Lawson signed the Agreement, which provided for the petitioner to complete the construction of the Lawsons' home begun by another builder.[2]  Although Mr. and Mrs. Lawson were identified collectively on the Agreement as the "Owner," only Mr. Lawson signed the Agreement.  Mr. Lawson avers that prior to the execution of the Agreement, his only discussions with the petitioner involved price—that arbitration was never mentioned.

Of particular import in this matter is the following statement in the right-hand margin of the first page of the Agreement:  "AIA Document A201-1997, General Conditions of the Contract for Construction, is adopted in this document by reference."  While the Agreement contains references to the "AIA Document A201-1997" ("General Conditions"), none of those references are to the arbitration provision in the General Conditions.[3]

---

[1]The circuit court noted in its order that the petitioner used the 1997 version of this form agreement, instead of the 2007 version.  Having been revised and updated by The American Institute of Architects, the 2007 version includes a section titled "Dispute Resolution," which requires the parties signing the agreement to check a box if they intend to resolve their disputes through arbitration.  No explanation was offered for why the petitioner elected to use the 1997 version of this form agreement.

[2]The facts reveal that the respondents needed to find a building contractor who could complete the construction of their home before winter.

[3]Section 4.4 of the General Conditions provides for a three-tiered, progressive resolution of disputes, beginning with a decision by the Architect, to be followed by mediation, and finally arbitration.  Each step is described as being a mandatory prerequisite to the next.  During oral argument, the petitioner's counsel confirmed that this alternative dispute resolution process was not invoked prior to instituting this litigation.

2

Although three exhibits were attached to the Agreement,[4] the General Conditions were neither attached nor ever provided to the Lawsons.[5]

On March 20, 2014, the petitioner instituted a civil action in the circuit court against the respondents asserting it was owed $303,686.31 under the Agreement.[6] The petitioner alleged that Mr. Lawson breached the construction contract and that the Lawsons had been unjustly enriched. The petitioner also sought damages for payroll, overhead and administrative costs, lost profits, lost interest on amounts due, damage to the petitioner's business reputation, and annoyance and inconvenience. In addition to seeking a monetary judgment, the petitioner sought to enforce its mechanic's lien[7] through a court-ordered sale

---

[4]The three exhibits were a list of equipment rates, a list of labor rates, and a transition fee agreement.

[5]Regarding the General Conditions, the appendix record contains an AIA Contract Documents Suggested Retail Price List, which reflects that the 2007 version of the General Conditions can be purchased from The American Institute of Architects for $24.99; there is no indication in the record as to whether the 1997 version can be readily obtained or what it would cost.

[6]Two other defendants were named in the action: H.B. Fuller Construction Products, Inc., which is alleged to have manufactured the grout utilized in the construction of the respondents' home, and Newtech Systems, Inc., a subcontractor and lien creditor involved in the construction of the respondents' home. They do not participate in this appeal.

[7]The petitioner filed its mechanic's lien against the respondents' property on January 27, 2014.

of the respondents' home. Arbitration is not mentioned in the petitioner's complaint, nor did the petitioner simultaneously file a motion to stay the action pending arbitration.

The respondents filed their answer in the circuit court on June 13, 2014, denying the petitioner's entitlement to a judgment against them. They also asserted a counterclaim against the petitioner for breach of contract, including allegations of defects in the construction of the home and overcharges under the Agreement.

On July 2, 2014, the petitioner filed a motion to dismiss the respondents' counterclaim and to compel arbitration.[8] The respondents opposed the motion on the basis that Mrs. Lawson, as a non-signatory to the Agreement, could not be compelled to arbitration. The respondents also asserted that the arbitration provision was not properly incorporated by reference into the parties' Agreement because Mr. Lawson was never provided a copy of the General Conditions nor advised of the requirement to arbitrate.

On March 20, 2015, the circuit court held a hearing on the petitioner's motion to dismiss and compel arbitration of the respondents' counterclaim. Through its order entered August 20, 2015, the circuit court denied the motion, finding "no agreement to

---

[8]The petitioner also sought to stay the respondents' cross-claims filed against the other named defendants pending arbitration.

4

arbitrate ever existed. Arbitration is a matter of contract and a party cannot be compelled to submit to arbitration unless it is clear he agreed to do so." In addressing the petitioner's argument that the General Conditions were properly incorporated by reference into the parties' Agreement, the circuit court stated that under *State ex rel. U-Haul Co. of West Virginia v. Zakaib*, 232 W.Va. 432, 752 S.E.2d 586 (2013), in order to uphold the validity of terms in a document incorporated by reference, it must be certain that the parties to the agreement had knowledge of the document and its terms. The circuit court found that the thirty-eight page General Conditions were not provided to Mr. Lawson when he signed the twelve-page Agreement, thus, "there can in no way be said to be a meeting of the minds on the inclusion of an arbitration provision because Mr. Lawson did not sign–or even *see*–the Conditions, which is the only document containing the arbitration provision." Commenting further, the circuit court stated:

> [N]owhere in the Agreement is it suggested that there are additional, material, substantive contract terms buried in the Conditions. The word "arbitration" does not appear anywhere in the Agreement–which is the only document Mr. Lawson ever saw. The Court also . . . note[s] . . . that the AIA form documents were updated in 2007, three years prior to the parties' contract. One of the changes made was the addition of a term in the agreement not only making clear that alternative dispute resolution was a term of the agreement, but requiring the owner to check a box if intending to agree to arbitration. Clearly, this is not the first time it has been suggested that the arbitration provision in the version of the form documents used in this case is less than conspicuous.

The circuit court found there was "no basis upon which to conclude that Mr. Lawson had the requisite knowledge of the contents of the [General] Conditions to establish his consent to be bound by the arbitration provision hidden within." This appeal followed.

## II. Standard of Review

The petitioner challenges the circuit court's denial of its motion to dismiss the respondents' counterclaim and to compel arbitration. As we held in *Credit Acceptance Corporation v. Front*, 231 W.Va. 518, 745 S.E.2d 556 (2013), "[a]n order denying a motion to compel arbitration is an interlocutory ruling which is subject to immediate appeal under the collateral order doctrine." 231 W.Va. at 519, 745 S.E.2d at 557, syl. pt. 1. Further,

> [w]hen an appeal from an order denying a motion dismiss is properly before this Court, our review is *de novo*. *See, e.g.*, Syl. pt. 4, *Ewing v.* [*Board of Educ.*], 202 W.Va. 228, 503 S.E.2d 541 [(1998)] ("When a party, as part of an appeal from a final judgment, assigns as error a circuit court's denial of a motion to dismiss, the circuit court's disposition of the motion to dismiss will be reviewed *de novo*.").

*Credit Acceptance*, 231 W.Va. at 525, 745 S.E.2d at 563. Our review is also plenary to the extent our analysis requires us to examine the circuit court's interpretation of a contract. *Zimmerer v. Romano*, 223 W.Va. 769, 777, 679 S.E.2d 601, 609 (2009) ("We apply a *de novo* standard of review to [a] circuit court's interpretation of [a] contract.") (citation omitted). With these principles in mind, we proceed to determine whether the circuit court erred in refusing to compel arbitration in this matter.

6

### III. Discussion

In seeking a reversal of the circuit court's order refusing to compel arbitration of the respondents' counterclaim, the petitioner asserts that the parties' Agreement clearly referenced the intent to incorporate the General Conditions, which were described in such a way that Mr. Lawson could easily ascertain the document's identity beyond doubt. The petitioner maintains that enforcement of the arbitration provision will not result in surprise as a reasonable party, who complies with the duty to read, would have obtained all the documents comprising the contract before signing.[9]

Conversely, the respondents maintain the circuit court correctly refused to compel arbitration. They posit that the language in the Agreement does not clearly indicate an intent to incorporate the entirety of the General Conditions. Relying upon the requirements for incorporation by reference, as adopted by this Court in *State ex rel. U-Haul Co. of West Virginia v. Zakaib*, 232 W.Va. 432, 752 S.E.2d 586, the respondents argue there is no basis upon which to conclude that Mr. Lawson had the requisite knowledge of the contents of the General Conditions to establish his consent to be bound by its terms. They

---

[9]The petitioner relies, in part, upon *Navient Solutions, Inc. v. Robinette*, No. 14-1215, 2015 WL 6756859 (W.Va. Nov. 4, 2015) (memorandum decision), as being supportive of its position that the arbitration provision in the General Conditions was properly incorporated by reference in the parties' Agreement. We disagree. There are critical factual differences between *Navient* and the case at bar, including the fact that Ms. Robinette "unambiguously declared" in each of the contracts she signed, as follows: "'I have read and agree to the terms of the Promissory Note accompanying this application.'" *Id.* at *4.

7

contend the issue is not whether a party has a duty to read the contract he has signed, but whether a separate document was properly incorporated into the contract in the first instance.

We begin our examination of this matter by acknowledging that "[b]oth federal and state laws reflect a strong public policy recognizing arbitration as an expeditious and relatively inexpensive forum for dispute resolution." *Parsons v. Halliburton Energy Services, Inc.*, 237 W.Va. 138, ___, 785 S.E.2d 844, 852 (2016). Importantly, however, we are also cognizant that a party cannot be compelled to arbitrate a claim or dispute absent an agreement to arbitrate. Indeed, "[u]nder the Federal Arbitration Act, 9 U.S.C. § 2, parties are only bound to arbitrate those issues that by clear and unmistakable writing they have agreed to arbitrate. An agreement to arbitrate will not be extended by construction or implication." Syl. Pt. 10, *Brown v. Genesis Healthcare Corp.*, 228 W.Va. 646, 724 S.E.2d 250 (2011), *vacated on other grounds by Marmet Health Care Center, Inc. v. Brown*, __ U.S. __, 132 S.Ct. 1201 (2012) (per curiam). Consequently, "the first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985).

Consistent with federal law, this Court held in syllabus point two of *State ex rel. TD Ameritrade, Inc. v. Kaufman*, 225 W.Va. 250, 692 S.E.2d 293 (2010), that

> [w]hen a trial court is required to rule upon a motion to compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. §§

8

1-307 (2006), the authority of the trial court is limited to determining the threshold issues of (1) whether a valid arbitration agreement exists between the parties; and (2) whether the claims averred by the plaintiff fall within the substantive scope of that arbitration agreement.

Absent an affirmative ruling on the first issue, the second issue is not reached.

In the case at bar, the circuit court appropriately addressed the threshold issue of whether a valid arbitration exists between the parties. The lower court concluded there was nothing upon which to conclude that Mr. Lawson had the requisite knowledge of the contents of the General Conditions, which were never provided to him, to establish his consent to be bound by the arbitration provision therein. We agree.

Like the respondents and the circuit court, we find *U-Haul*, 232 W.Va. 432, 752 S.E.2d 586, to be particularly relevant to the issue at hand. In *U-Haul*, this Court applied state law contract principles in determining whether an addendum containing an arbitration provision had been incorporated by reference into the document signed by the parties. Specifically, U-Haul's customers would be presented with a one-page, pre-printed rental contract, which the customers would sign below a line that provided: "I acknowledge that I have received and agree to the terms and conditions of this Rental Contract and the Rental Contract Addendum." *Id.* at 436, 752 S.E.2d at 590. For those customers using interactive electronic terminals for the rental transaction, after proceeding through a series of screens

9

that required the customer to click "Accept" before the next screen with rental terms would appear, the customer would reach a final screen that said, "By clicking Accept, I agree to the terms and conditions of this Rental Contract and Rental Contract Addendum." *Id.* at 437, 752 S.E.2d at 591. Regardless of whether a customer received the pre-printed or electronic rental agreement, the customer was not presented with the addendum containing the arbitration provision prior to signing the rental agreement.

> With particular regard to the matter currently before us, we held in *U-Haul* that
>
>> [i]n the law of contracts, parties may incorporate by reference separate writings together into one agreement. However, a general reference in one writing to another document is not sufficient to incorporate that other document into a final agreement. To uphold the validity of terms in a document incorporated by reference, (1) the writing must make a clear reference to the other document so that the parties' assent to the reference is unmistakable; (2) the writing must describe the other document in such terms that its identity may be ascertained beyond doubt; and (3) it must be certain that the parties to the agreement had knowledge of and assented to the incorporated document so that the incorporation will not result in surprise or hardship.

*Id.* at 434, 752 S.E.2 at 589, syl. pt. 2. In applying this holding to the facts presented in *U-Haul*, this Court concluded that "the circuit court correctly found that U-Haul was unsuccessful in its attempts to incorporate the Addendum into the Rental Contract." *U-Haul*, 232 W.Va. at 444, 752 S.E.2d at 598. As this Court explained,

> Both U-Haul's pre-printed Rental Contracts and electronic contracts succinctly referenced the Addendum. However, such

10

a brief mention of the other document simply is not a sufficient reference to the Addendum to fulfill the proper standard. The reference to the Addendum is quite general with no detail provided to ensure that U-Haul's customers were aware of the Addendum and its terms, including its inclusion of an arbitration agreement. . . . Finally, and most troubling to this Court, is the fact that U-Haul's practice was to provide customers a copy of the Addendum *only after* the Rental Agreement had been executed. Under these circumstances, there simply is no basis upon which to conclude that a U-Haul customer executing the Rental Agreement possessed the requisite knowledge of the contents of the Addendum to establish the customer's consent to be bound by its terms, which terms include the arbitration agreement sought to be enforced by U-Haul in this case.

*U-Haul*, 232 W.Va. at 444, 752 S.E.2d at 598. This Court further observed that some courts

> are careful not to enforce arbitration clauses [incorporated by reference] . . . unless the incorporated document is delivered to the consumer. For example, a North Carolina appellate court held that an account holder was not bound by an arbitration clause in a bank services agreement, even though he had executed a signature card that incorporated the agreement by reference, when the bank had not delivered a copy of the bank services agreement to him until after he commenced litigation and he was unaware of the arbitration clause.
>
> National Consumer Law Center, Consumer Arbitration Agreements, § 5.2.2.5, at 112 (6th ed.2011) (footnote omitted) (citing *Kennedy v. Branch Banking & Trust Co.*, 165 N.C.App. 275, 600 S.E.2d 520 (2004) (unpublished table dec.; full text reported at 2004 WL 1491197)).

*U-Haul*, 232 W.Va. at 443 n.13, 752 S.E.2d at 597 n.13.

11

Recently, we applied *U-Haul*'s requirements for incorporation by reference in *Evans v. Bayles*, 237 W.Va. 269, 787 S.E.2d 540 (2016). In *Evans*, the arbitration provisions were set forth in a brokerage agreement that was incorporated by reference into a signed IRA application. In reversing the circuit court's denial of a motion to compel arbitration, we found it significant that the IRA application not only referenced the brokerage agreement, but also expressly referenced where the arbitration provision could be found within the brokerage agreement. In addition, we noted a provision within the IRA application that stated:

> You acknowledge that you have received and read the *Ameriprise* Brokerage Client Agreement ("Agreement") and agree to abide by its terms and conditions as currently in effect or as they may be amended from time to time. You hereby consent to all these terms and conditions with full knowledge and understanding of the information contained in the Agreement. This brokerage account is governed by a predispute arbitration clause which is found on Section 26, page 3 of the Agreement. You acknowledge receipt of the predispute arbitration clause.

*Id.* at __, 787 S.E.2d at 542. Based upon the facts in *Evans*, we concluded that

> [t]hose express references described the Brokerage Agreement in such terms as to leave no doubt as to its identity. Further, the appendix record contains an affidavit executed by Mr. Evans in which he states that he called to the decedent's attention the IRA Application's specific reference to the predispute arbitration clause contained in the Brokerage Agreement; that he explained the arbitration process to the decedent; and that he provided a complete copy of the Brokerage Agreement to the decedent. Moreover, there has been no claim of surprise or hardship.

*Id.* at __, 787 S.E.2d at 544.  Contrasting the facts in *Evans* with those in the case at bar, the deficiency in the petitioner's argument, particularly under the guidance provided in *U-Haul*, is readily apparent.

Unlike the facts in *Evans*, there is no provision in the Agreement requiring Mr. Lawson to acknowledge that he had received, read, or agreed to the General Conditions, nor is there any allegation that the petitioner expressly brought the General Conditions to Mr. Lawson's attention.  To the contrary, the appendix record contains Mr. Lawson's affidavit in which he states that the only discussions he had with the petitioner regarding the construction contract "were about the price and what compensation G & G Builders would be entitled to[;]" that the only papers ever presented to him were the Agreement and its three exhibits; and that at no time prior to the instant litigation did he ever see the General Conditions.  Moreover, unlike the multiple references to arbitration in the IRA application signed in *Evans*, the word "arbitration" does not appear anywhere in the parties' Agreement; and, unlike the brokerage agreement that was provided to the client in *Evans*, the General Conditions were never provided to Mr. Lawson.  The only documents attached to the Agreement were three exhibits pertaining to costs and compensation, which is consistent with Mr. Lawson's pre-execution discussions with the petitioner.

Upon our consideration of the facts in the case at bar, we cannot find that the *U-Haul* requirements for incorporation by reference were satisfied. The reference to the General Conditions failed to provide the detail necessary to ensure that Mr. Lawson was aware of the General Conditions and its terms, including the arbitration provision. Moreover, the absence of a detailed description of the General Conditions was exacerbated by the fact that the petitioner never provided the General Conditions to Mr. Lawson. Although the first page of the Agreement states that the General Conditions are "adopted in this document by reference," the few references in the Agreement to the General Conditions are for a definition of a contract term, or to provide greater detail regarding a contract term. There is simply no indication in the Agreement that additional, material, and substantive contractual provisions, including arbitration, were set forth in the General Conditions.

Most problematic for the petitioner, however, is the third *U-Haul* requirement: "it must be certain that the parties to the agreement had knowledge of and assented to the incorporated document so that the incorporation will not result in surprise or hardship." *U-Haul*, 232 W.Va. at 435, 752 S.E.2d at 589, syl. pt. 2, in part. Just as we found it to be "most troubling" that U-Haul only provided its customers with a copy of the addendum containing the arbitration provision after the rental agreement was executed, we find it equally troubling that the petitioner did not provide Mr. Lawson with the General Conditions either before or after he signed the Agreement. Under the facts presented, there is no basis upon which we

14

can find that when Mr. Lawson executed the Agreement, he "possessed the requisite knowledge of the contents of the [General Conditions] to establish [his] consent to be bound by its terms, which terms include the arbitration [provisions] sought to be enforced by" the petitioner. *U-Haul*, 232 W.Va. at 444, 752 S.E.2d at 598. Accordingly, we conclude that the circuit court correctly determined there was no agreement between the petitioner and Mr. Lawson to arbitrate their dispute.[10]

We find support for our conclusion in the decisions of other courts. For example, in *Wofford v. M.J. Edwards & Sons Funeral Home Inc.*, 490 S.W.3d 800 (Tenn. Ct. App. 2015), Ms. Wofford signed a contract for the funeral home's services being provided in relation to the death of her father. Directly above Ms. Wofford's signature on the contract was the following language in bold type:

> NOTICES TO PURCHASER/CO-PURCHASER
>
> SEE PART THREE FOR TERMS AND CONDITIONS THAT ARE PART OF THIS AGREEMENT. DO NOT SIGN THIS AGREEMENT BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACES. YOU ACKNOWLEDGE RECEIPT OF AN EXACT COPY OF THIS AGREEMENT.
>
> BY SIGNING THIS AGREEMENT, *YOU ARE AGREEING THAT ANY CLAIM YOU MAY HAVE AGAINST THE SELLER SHALL BE RESOLVED BY ARBITRATION* AND YOU ARE

---

[10]Although the parties assert arguments concerning whether the arbitration provision is procedurally and/or substantively unconscionable, we need not address such issues in light of our ruling herein.

GIVING UP YOUR RIGHT TO A COURT OR JURY TRIAL,
AS WELL AS YOUR RIGHT OF APPEAL.

*Id.* at 804 (Emphasis added.). It was undisputed that Ms. Wofford was not provided with a copy of Part Three, which contained the actual arbitration provisions. Later, a dispute arose related to the funeral home's services and, after litigation was instituted by Ms. Wofford, the funeral home sought to compel arbitration. In upholding the trial court's denial of the motion to compel arbitration, the appeals court stated:

> Ms. Wofford was not provided with the part of the Contract that Edwards now seeks to enforce against her. . . . [T]here is no dispute that Part 2 of the Contract expressly mentions arbitration. We note, however, that at this juncture the issue is not whether arbitration should be enforced against Ms. Wofford, but whether Part 3 should be considered incorporated by reference into the parties' Contract. . . .
>
> Under the circumstances of this case, we cannot conclude . . . mutual assent to the terms contained in Part 3 of the Contract. This is not a situation where a party is provided with a contract but voluntarily fails to read and understand its terms. Simply put, Ms. Wofford cannot be said to have consented to terms of a contract that she was never given an opportunity to review.

*Id.* at 813. Similarly, in *Dakota Foundry, Inc. v. Tromley Industrial Holdings, Inc.*, 737 F.3d 492 (8th Cir. 2013), the Court of Appeals affirmed the district court's denial of a motion to compel arbitration. In addressing whether the parties had agreed to arbitrate their dispute, the court questioned whether the standard terms and conditions of sale, which were referenced but not included in the price quotes, had been incorporated into the parties' agreement. Applying South Dakota law regarding the formation of contracts, the Court of

16

Appeals found that the "Standard Terms and Conditions of Sale were not readily available to Dakota[;]" that the parties never discussed arbitration; and that Tromley's quotes did not include an arbitration provision. *Id.* at 496. While the quotes referred to a "Standard Terms and Conditions of Sale" document as being attached, the court observed that it was not attached and concluded there was no clear evidence that the parties intended arbitration to be part of their agreement. *Id.*

Our research further shows that to the extent courts have obligated parties to the terms of incorporated documents that were never received, those cases have typically involved transactions between experienced business entities. *See, e.g.,* Williston on Contracts § 30:25 (2012 & 2016 Supp.). For instance, in *Logan & Kanawha Coal Co., LLC v. Detherage Coal Sales, LLC*, 514 F.App'x 365 (4th Cir. 2013), a one-page purchase order, which stated that "ALL TERMS & CONDITIONS ON THE FOLLOWING PAGES ARE INTO [sic] AND MADE A PART OF THIS CONTRACT[,]" was sent by Logan & Kanawha Coal to Detherage Coal Sales; however, the "following pages" were not attached to the purchase order. *Id.* at 366. The terms and conditions contained an arbitration provision. In determining whether the unattached terms and conditions were part of the parties' contract, the Fourth Circuit noted that "[t]he Supreme Court of Appeals of West Virginia has recognized that separate writings may be incorporated by reference into a contract," but has not "articulated the requirements for effective incorporation by reference."

17

*Id.* at 367.  Relying upon "general principles of common law incorporation by reference[,]" the Court of Appeals stated that "'[i]ncorporation by reference is proper where the underlying contract makes clear reference to a separate document, the identity of the separate document may be ascertained, and incorporation of the document will not result in surprise or hardship.'"  *Id.* at 367-68 (citing *Standard Bent Glass Corp. v. Glassrobots Oy*, 333 F.3d 440, 447 (3d Cir. 2003)).  In its application of these requirements, which are notably similar to those this Court adopted eight months later in *U-Haul*, the Fourth Circuit stated that "the parties' course of dealings allays any concern that incorporation will result in surprise or hardship" to Detherage Coal Sales.  The Court highlighted the fact that Mr. Detherage, the sole owner and member of Detherage Coal Sales, had "personally received [Logan & Kanawha Coal's] terms and conditions–always containing the same arbitration provision–on at least four prior occasions."  *Logan & Kanawha Coal*, 514 F.App'x at 369.  The Fourth Circuit added that "even if we put aside Detherage's imputed knowledge, [Detherage Coal Sales'] claim of surprise is undercut by the fact that when [Logan & Kanawha Coal] appended its 'Standard' terms and conditions to its May 2010 demand for assurances, [Detherage Coal Sales] raised no objection to their applicability before beginning performance."[11]  *Id.*  The Court of Appeals concluded that

---

[11]Because Detherage Coal Sales had failed to deliver any coal to Logan & Kanawha Coal pursuant to their agreement, Logan & Kanawha Coal's representative visited Detherage Coal Sales' mine where it discovered that coal was being mined and shipped to another customer.  Thereafter, Logan & Kanawha Coal sent a letter to Detherage Coal Sales demanding assurance of performance and enclosed a copy of their contract, as well as a copy

(continued...)

18

> [a]lthough it must be clear that the parties to the agreement had knowledge of and assented to the incorporated terms, Williston on Contracts § 30:25, the party challenging incorporation need not have actually received the incorporated terms in order to be bound by them, *especially when both parties are sophisticated business entities*.

*Logan & Kanawha Coal*, 514 F.App'x at 368 (emphasis added).

In *Standard Bent Glass*, 333 F.3d 440, the case cited in *Logan & Kanawha Coal*, Standard Bent Glass, a domestic buyer, conceded that it had received a standard sales agreement from Glassrobots, a Finnish manufacturer, and that the agreement included a reference to binding arbitration; however, it denied ever receiving an appendix to the sales agreement, "Orgalime S92," which contained an arbitration clause. In concluding that the arbitration clause had been incorporated into the parties' agreement, the Court of Appeals for the Third Circuit observed that "[t]he Orgalime S92 general conditions are frequently used in international trade and the submission of disputes to arbitration is common industry practice[,]"[12] and that Standard Bent Glass's president, who had extensive international trade experience, negotiated the agreement with Glassrobots. Of particular import to the case *sub judice*, the court expressly stated that

> [i]f the matter here involved a non-merchant individual as the product buyer, or if the reference to arbitration had been

---

[11](...continued)
of the standard terms and conditions containing the arbitration clause.

[12]*Standard Bent Glass*, 333 F.3d at 448.

19

> buried, the analysis might very well be different. . . . *It is appropriate to require a merchant to exercise a level of diligence that might not be appropriate to expect of a non-merchant.*

*Standard Bent Glass*, 333 F.3d at 447 n.10 (emphasis added).

Both *Logan & Kanawha Coal* and *Standard Bent Glass* clearly suggest that transactions between experienced business entities are to be viewed differently from those that do not, particularly when the business entity against whom arbitration is sought was already familiar with the arbitration requirements, either through previous business dealings between the parties or industry practice. In the case at bar, although the petitioner is an experienced building contractor, Mr. Lawson is a private individual who was desperate to find a building contractor who could complete the construction of the respondents' home before winter. Mr. Lawson had never before signed a contract for the construction of a home,[13] nor did he have prior business dealings with the petitioner. Further, there is no indication that Mr. Lawson was familiar with home construction industry practice or the form documents published by The American Institute of Architects.

Based on the foregoing, including our prior decisions in *U-Haul* and *Evans*, as well as our consideration of the facts and circumstances of the instant matter, we find no

---

[13]The petitioner suggested below that Mr. Lawson's prior involvement with a sanitation business elevated his level of sophistication. Of course, Mr. Lawson also entered into a contract with the initial builder of his "dream home" merely on a handshake.

error in the circuit court's conclusion that there was no agreement between the petitioner and Mr. Lawson to arbitrate their dispute. Accordingly, we affirm the circuit court's denial of the petitioner's motion to dismiss the respondents' counterclaim and to compel arbitration.[14]

## IV. Conclusion

For the reasons stated above, the August 20, 2015, order of the Circuit Court of Cabell County is hereby affirmed. This matter is remanded to the circuit court for further proceedings consistent with this opinion.

Affirmed and Remanded.

---

[14]The petitioner also asserts that the circuit court erred in finding Mrs. Lawson, a non-signatory to the Agreement, could not be compelled to arbitration. We find this issue is mooted by our ruling herein.