# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Kourt Security Partners, LLC,**
**Defendant Below, Petitioner**

**FILED**
**May 26, 2020**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs.)  No. 19-0395** (Monongalia County 15-C-733)

**United Bank, Inc.,**
**Plaintiff Below, Respondent**

## MEMORANDUM DECISION

Petitioner Kourt Security Partners, LLC, by counsel Charles J. Kaiser Jr. and Jeffrey D. Kaiser, appeals the circuit court's "Order Granting [Respondent United Bank, Inc.'s] Motion to Secure Loan Collateral and Denying [Petitioner's] Motion for Rule 60 Relief." Respondent United Bank, Inc., by counsel Shawn P. George and Jennie Ovrom Ferretti, submitted a response to which petitioner submitted a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Respondent United Bank, Inc. ("United") filed the underlying action on November 13, 2015, seeking an order finding petitioner Kourt Security Partners, LLC ("Kourt") then-owed United $737,310.42, together with pre- and post-judgment interest, late fees, costs, expenses, and attorney's fees related to the default by MB Security, LLC, on two loans from United totaling $827,000 in principal amount ("loans"). According to the circuit court, United sued Kourt because it purchased the collateral that was pledged as security for the loans from Betty Parmer at a private sale. Per United the assets included the former assets of Secure US, in which United claimed a perfected first priority security interest. Kourt filed an answer, denying that United's lien survived the private sale; extended to any asset of Secure US, including customer contracts, renewals thereof, or proceeds therefrom; or that United was entitled to any of the collateral.

United; MB Security; Secure US; and Betty Parmer, individually, and by way of power of attorney given to her nephew, Mitchell Brozik, under a management agreement, entered into various agreements regarding the loans and the security pledged to them. The circuit court found that the agreements include the loan agreements; promissory notes; pledge and security

1

agreements; the hypothecation agreement;[1] the management agreement between Betty Parmer, Secure US, and MB Security; and financing statements ("loan documents"). According to the circuit court, the loan documents have been the subject of several legal actions and proceedings "and all are of record [with the circuit court]. There has never been alleged or found any ambiguity in any of the [l]oan [d]ocuments."

The circuit court also found that "Kourt admits that United holds a valid, enforceable first-priority security interest in the [c]ollateral identified in the loan documents. However, Kourt disputes that United's right in the [c]ollateral includes the Secure US customer contracts, any post sale renewals or extensions thereof or proceeds therefrom." It further found that based upon the evidence contained in the record, since the private sale, Kourt has received over $4.2 million in revenue from the contracts at a rate of approximately $140,000 per month. However, Kourt asserted that paragraph 12.C. of the September 21, 2012, promissory note and security agreement, which defines property subject to the security agreement, does not include the customer contracts, renewals, and proceeds therefrom.[2] The court found the January 23, 2013, commercial security agreement relevant because it expressly incorporates the provisions of related documents, including all promissory notes, security agreements, and the hypothecation agreement executed in connection with it.

After the default and United's demand to Kourt to turn over the collateral or pay the default indebtedness, Kourt turned over the vehicles owned by Secure US, which were a part of the collateral to which United's first priority lien interest attached, and United reduced the outstanding principal due on the loans accordingly. However, Kourt refused to pay the balance due or owing or to produce the remaining collateral to United, claiming that United had no legal right to the balance or the collateral. United filed the underlying action in 2015, and on April 8, 2016, United filed a motion for summary judgment before the circuit court. By order entered on November 28, 2016, the circuit court granted United's motion, finding that United had a perfected first priority security interest in the collateral, which survived the private sale by Betty Parmer to Kourt of all the assets of Secure US. Kourt appealed that order to this Court, and this Court affirmed that order in *Kourt Security Partners, LLC v. United Bank, Inc.*, No. 16-1206, 2018 WL 1225516 (W. Va. Mar. 9, 2018) (memorandum decision) ("*Kourt I*").

---

[1]Hypothecation is "[t]he pledging of something as security without delivery of title or possession." Black's Law Dictionary 892 (11th ed. 2019).

[2] The paragraph at issue provides as follows:

(2) **Accounts and Other Rights to Payment.** All rights I have now or in the future to payments including, but not limited to, payment for property or services sold, leased, rented, licensed, or assigned, whether or not I have earned such payment by performance. This includes any rights and interests (including all liens and security interests) which I may have by law or agreement any Account Debtor or obligor of mine.

On March 7, 2017, United filed a motion for issuance of a writ of fieri facias.[3] Kourt opposed that motion, asserting that the summary judgment order was not a "judgment for money" so fieri facias was not appropriate relief. United made additional demands for payment and satisfaction of the defaulted loans, but Kourt refused to pay. United served discovery on Kourt and subpoenaed the production of various records regarding the collateral, which Kourt produced. United also deposed Kourt's corporate representative, Patrick Egan. Kourt produced and Mr. Egan testified regarding a confidential list of Secure US contracts acquired by Kourt. However, Kourt refused United's demand for the production of the contracts.

On December 20, 2018, United filed a motion to secure the loan collateral, and the circuit court scheduled a hearing on that motion for January 9, 2019. On January 2, 2019, Kourt filed its Rule 60(b)(6)[4] motion to clarify or supplement, more than two years after the entry of the summary judgment order. United filed an expedited response to which Kourt filed a reply. Following the January 9, 2019, hearing, the circuit court entered its "Order Granting [Respondent's] Motion to Secure Loan Collateral and Denying [Petitioner's] Motion for Rule 60 Relief."

In that order, the circuit court found that United had consistently asserted its right in and to the collateral, which secured the defaulted loans. It determined that Kourt conceded that it owns and controls various customer contracts from hundreds of people and businesses as a result of the Secure US private sale and that the value of those customer contracts and the monthly recurring revenue exceeds the money owed to United on the defaulted loans. It also found there is a marketplace of willing buyers for those customer contracts. However, Kourt argued that United's interest in the collateral does not extend to the customer contracts, the subsequent renewals and/or extensions thereof, or the proceeds therefrom, based upon Kourt's interpretation of the loan documents. The circuit court determined that United is entitled to the collateral under the express language of the loan documents and "[n]othing in Kourt's Rule 60(b)(6) motion alters this conclusion or supports a different result." It also found that the only Secure US assets with significant value are and have always been the customer contracts or accounts. "There is no dispute about this, nor basis to carve them out of the [c]ollateral for the MB Security Loans." The circuit court held that the loan documents specifically incorporate the "Accounts and Rights to Payments," including, but not limited to, the promissory notes and security agreements, which reference "payment intangible" and "proceeds," all of which refute any such construction or contrary result.

With regard to petitioner's Rule 60(b)(6) motion, the circuit court found that it was not supported by the facts or record. Because the

---

[3]A writ of fieri facias is "[a] writ of execution that directs a marshal or sheriff to seize and sell a judgment debtor's property to satisfy a money judgment[.]" Black's Law Dictionary 771 (11th ed. 2019).

[4]Rule 60(b)(6) of the West Virginia Rules of Civil Procedure provides as follows: "On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: . . . . (6) any other reason justifying relief from the operation of the judgment."

3

basis of the motion was never previously asserted at any time during the three (3) year pendency of [the underlying] action, nor on appeal to [this Court]. It is therefore not filed within a reasonable time as required under the Rule. The motion also fails to allege "any other reason justifying relief from the operation of the judgment" as required under the Rule.

It further found that the motion's legal argument was flawed and unpersuasive because "Accounts and Other Rights to Payment" are listed as collateral in the promissory note and security agreement governing the loans and confirmed by both the hypothecation and management agreements. According to the circuit court,

> [a]ll parties, including Kourt and Mr. Egan, who managed Secure US for Mrs. Parmer for a period after Mr. Brozik and MB Security were removed as managers, knew, understood and testified in various legal proceedings surrounding Secure US, Mrs. Parmer and Mr. Brozik that MB Security, LLC was a management company. It had no customer accounts of its own. The customer accounts it managed, received payments on and pledged to United on the Loans were the customer accounts of Secure US. [It also found that those are the] very same accounts Kourt purchased from Mrs. Parmer at private sale, and renewed, extended or re-signed on which Kourt has received $4.2 million since the sale, or an average of approximately $140,000.00 per month . . . Throughout this time, the [c]ollateral was subject to United's first priority perfected security interest. These are the same customer accounts that MB Security LLC pledged to United under the Promissory Notes and Security Agreements, by authority of the Management Agreement and which the Hypothecation Agreement ratified and confirmed.

The circuit court determined that the case does not present the "extraordinary circumstances" necessary to invoke Rule 60(b)(6), as it is a simple case of a borrower pledging all the assets of a business to secure a bank loan. Here, the borrower defaulted, Kourt purchased the assets, and the assets are subject to United's lien. The circuit court further found that

> it would be unfair and unreasonable to permit Kourt [to] attack the [s]ummary [j]udgment [o]rder now. The record suggests Kourt has stalled and frustrated for Kourt's sole benefit and to United's substantial detriment, possession of the [c]ollateral for several years and delayed the turnover to United of [c]ollateral to which United is entitled. . . . The [c]ourt also finds that the argument put forth in Kourt's Rule 60(b)(6) motion is time barred. It should have been asserted in [petitioner's] [a]nswer to the [c]omplaint, or in Kourt's appeal of [the circuit court's] ruling that United holds a first-priority security interest in and to **all** the Secure US assets. Kourt never did so.

(Emphasis in original.) Further, the circuit court found that petitioner's argument that the West Virginia Uniform Commercial Code supports its theory that an interest in general intangibles does not include an interest in accounts "has no application here as it ignores and is at direct odds with the express language of the [l]oan [d]ocuments, which control."

4

The circuit court granted United's motion to secure loan collateral and denied Kourt's Rule 60(b)(6) motion. Kourt was ordered to turn over and deliver to United's counsel all customer contracts set forth in Exhibit 2 to the 30(b)(7) representative's deposition and all cash proceeds therefrom in satisfaction of the defaulted loans. "Upon sale or other satisfaction by United Bank of the defaulted loan indebtedness, United Bank is required to return to Kourt such of the customer contracts and proceeds therefrom as are not necessary to satisfy the defaulted loan indebtedness." Petitioner appeals from that March 19, 2019, order.

On appeal, petitioner sets forth three assignments of error: (1)the circuit court's March 19, 2019, order is erroneous and should be reversed because the court incorrectly analyzed and applied the law surrounding the incorporation by reference doctrine to incorporate the terms and conditions of various loan documents into the hypothecation agreement security agreement – pledge and commercial security agreement executed by Betty Parmer; (2) the circuit court's March 19, 2019, order is erroneous and should be reviewed de novo and reversed because the circuit court failed to ensure a proper record had been developed which would support that order's legal and factual conclusions; and (3) the circuit court's March 19, 2019, order is erroneous and should be reviewed de novo and reversed because the court failed to set forth adequate findings of fact and conclusions of law supported by the case record.

At the outset, we look to our decision in *Kourt I*, wherein we stated that

[i]n August and September of 2012, MB Security and Mr. Brozik obtained two loans from United Bank, totaling $827,000, that are relevant to the present case. First, they refinanced a $150,000 vehicle loan. This loan was secured by vehicles already owned or subsequently used in the Secure US business. In the second loan, Mr. Brozik and MB Security borrowed $677,000 from United Bank to satisfy existing creditors and supply working capital for the business. This latter loan was allegedly secured by the Secure US assets, as evidenced by agreements signed by Mr. Brozik as Ms. Parmer's power of attorney.

*Id.* at *2. Further, we agreed with the circuit court that

between the time Ms. Parmer bought the assets in May of 2012 and her sale to Kourt Security in November of 2014, MB Security borrowed $827,000 from United Bank, pledging the assets as collateral; that Kourt Security was aware of United Bank's loans to MB Security; that United Bank had a perfected security interest in and to all of the assets at the time of the sale to Kourt Security; and United Bank never sold or transferred its interest.

*Id.* at *4.

With regard to petitioner's first assignment of error, which addresses incorporation by reference, petitioner contends that in its March 19, 2019, order, the circuit court relies almost entirely on the "incorporation by reference" language in the Parmer documents to support its holding that United's security interest covers not just all of the assets set forth therein but also all of the assets described within MB Security's loan documents. However, that order fails to set forth

5

any legal support for that finding. Further, the circuit court fails to make the necessary findings to satisfy *State ex rel. U-Haul Co. of West Virginia v. Zakaib*, 232 W. Va. 432, 752 S.E.2d 586 (2013). Petitioner contends that not only is the order "entirely lacking any reference to the elements required for proper incorporation by reference, it fails to state any factual findings or cite any applicable evidence which would satisfy these elements. . . . This omission justifies reversal of the March 19, 2019[, o]rder."

Petitioner further contends that the language used by United in the Parmer documents tries to work as a catch-all provision to incorporate every possible loan and loan document that in any way related to MB Security and/or the loans. It argues that this is "not a legally enforceable incorporation by reference as it fails to satisfy the 'make a clear reference to the other documents so that the parties' assent to the reference is unmistakable' and the 'describe the other document in such terms that its identity may be ascertained beyond doubt' requirements."

We agree with United that petitioner seeks to improperly stand in the shoes of Betty Parmer to alter her intent. This Court previously considered the loans underlying this matter in *Brozik v. Parmer*, Case Nos. 16-0292, 16-0400, and 16-0238, 2017 WL 65475 (W. Va. Jan. 16, 2017) (memorandum decision). As we set forth in that decision, in the underlying action in Case No. 16-0238, Ms. Parmer

> alleged that, without her knowledge, United Bank loaned an additional $827,000 to MB Security pursuant to the management agreement and took as collateral the former Secure US assets she owned. However, Ms. Parmer admitted that she signed the management agreement [and] that she contacted United Bank to originate the loan; . . . By order entered on February 12, 2016, the circuit court granted United Bank's motion for summary judgment.

*Id.* at *5-6.[5] After considering all of the loan documents and arguments regarding those loans presented to this Court, we affirmed the grant of summary judgment to United. *Id.* at *18. Both the circuit court and this Court clearly recognized that the collateral to secure United's loan were the "former Secure US assets" Ms. Parmer owned. It is disingenuous for petitioner to now attempt to argue what is clearly the most valuable assets it possesses, the customer contracts, were not included in the collateral for that loan.

---

[5]We are also mindful of our previous finding that

> [t]he evidence revealed that Mr. Brozik caused his aunt to become the owner of his company's assets as part of a scheme to avoid paying a lawful judgment obtained by a competing security company, SAFE. He formed another company, MB Security, in order to use the former Secure US assets and to continue doing business as usual, without any regard for the duty owed to his aunt who assisted him.

*Brozik v. Parmer*, Nos. 16–0292, 16–0400, and 16–0238, 2017 WL 65475 at *9 (W. Va. Jan. 16, 2017) (memorandum decision).

6

In the law of contracts, parties may incorporate by reference separate writings together into one agreement. However, a general reference in one writing to another document is not sufficient to incorporate that other document into a final agreement. To uphold the validity of terms in a document incorporated by reference, (1) the writing must make a clear reference to the other document so that the parties' assent to the reference is unmistakable; (2) the writing must describe the other document in such terms that its identity may be ascertained beyond doubt; and (3) it must be certain that the parties to the agreement had knowledge of and assented to the incorporated document so that the incorporation will not result in surprise or hardship.

Syl. Pt. 2, *State ex rel. U-Haul Co. of West Virginia* at 434, 752 S.E.2d at 589. In addressing our holding in *U-Haul*, this Court summarized the following relevant facts:

U-Haul's customers would be presented with a one-page, pre-printed rental contract, which the customers would sign below a line that provided: **"I acknowledge that I have received and agree to the terms and conditions of this** Rental Contract and the Rental Contract Addendum." [*U-Haul*] at 436, 752 S.E.2d at 590. For those customers using interactive electronic terminals for the rental transaction, after proceeding through a series of screens that required the customer to click "Accept" before the next screen with rental terms would appear, the customer would reach a final screen that said, "By clicking Accept, I agree to the terms and conditions of this Rental Contract and Rental Contract Addendum." *Id.* at 437, 752 S.E.2d at 591. Regardless of whether a customer received the pre-printed or electronic rental agreement, the customer was not presented with the addendum containing the arbitration provision prior to signing the rental agreement.

*G&G Builders, Inc. v. Lawson*, 238 W. Va. 280, 284, 794 S.E.2d 1, 5 (2016) (emphasis in original).

In the instant case, the hypothecation agreement incorporates by reference "all promissory notes, security agreements, mortgages, deeds of trust, business loan agreements, construction loan agreements, resolutions, guaranties, environmental agreements, subordination agreements, assignments, and any other documents or agreements executed in connection with either the [l]oans or this [h]ypothecation [a]greement, or both, whether now or hereafter existing." As the circuit court noted in its order, the Commercial Security Agreement, dated January 23, 2013, expressly incorporates the provisions of related documents, including all promissory notes and security agreements executed in connection with it. Unlike the arbitration agreement in *U-Haul*, there is no question that Ms. Parmer, or any other borrower, was presented with and signed the promissory notes and additional loan documents at issue. Under the facts of this case, it is clear that the borrowers, whose shoes petitioner stands in now, knew or should have known the terms of the loan documents at issue. Therefore, we find no merit in petitioner's first assignment of error.

The second and third assignments of error center on the substance of the circuit court's order, particularly the record before the circuit court and the court's findings of fact and conclusions of law. Petitioner argues that the most material omission within the circuit court's

order is the "complete lack of factual and/or legal analysis" regarding the contracts at issue and how the West Virginia UCC would categorize them. It contends that the lack of analysis is compounded by the fact that there are no customer contracts or even sample contracts contained in the record. According to petitioner, the "deficient record constitutes reversible error and warrants reversal" of the circuit court's order. Petitioner further asserts that the circuit court order does not contain appropriate findings of fact and conclusions of law as mandated by Rule 52(a) of the West Virginia Rules of Civil Procedure. In support of that contention, petitioner argues that that order sets forth numerous conclusory statements with no citation to the record or applicable law.

Rule 52(a) of the West Virginia Rules of Civil Procedure provides, in relevant part, as follows:

> In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon, and judgment shall be entered pursuant to Rule 58; . . . Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.

West Virginia Code § 46-9-607(a) allows a secured party, such as United, to take certain actions, including:

> (a) *Collection and enforcement generally.* -- If so agreed, and in any event after default, a secured party:
> (1) May notify an account debtor or other person obligated on collateral to make payment or otherwise render performance to or for the benefit of the secured party;
> (2) May take any proceeds to which the secured party is entitled under section 9-315;
> (3) May enforce the obligations of an account debtor or other person obligated on collateral and exercise the rights of the debtor with respect to the obligation of the account debtor or other person obligated on collateral to make payment or otherwise render performance to the debtor, and with respect to any property that secures the obligations of the account debtor or other person obligated on the collateral; . . . .

In addition,

> (b) When commingled proceeds identifiable. Proceeds that are commingled with other property are identifiable proceeds:
> (1) If the proceeds are goods, to the extent provided by section 9-336; and
> (2) If the proceeds are not goods, to the extent that the secured party identifies the proceeds by a method of tracing, including application of equitable principles, that is permitted under law other than this article with respect to commingled property of the type involved.

W. Va. Code § 46-9-315(b).

In its prior summary judgment order, which was affirmed by this Court, the circuit court found that "United [] had a perfected security interest in and to all Secure US assets at the time Ms. Parmer sold the assets to Kourt []." In its motion to secure loan collateral, United argued that there is "no doubt Kourt owes United these amounts immediately and that failing payment, United is entitled to the assets securing the obligations to United may be paid in full." Contrary to Kourt's argument, the circuit court's eleven-page order addresses multiple cases, statutes, and rules, including discussing this Court's earlier findings in *Brozik v. Parmer*. It also relied upon numerous documents; those documents included exhibits to the deposition of Kourt's corporate representative, the loan documents, an exhibit to a motion, and the breadth of materials considered by the circuit court in reaching its earlier findings, including its summary judgment order. This Court has long held that "[t]he purpose of [] Rule [52] is to enable an appellate court to apply the law to the facts upon the review of such a case, and it has been held that a case may be remanded where the rule has not been complied with." *Blevins v. May*, 158 W. Va. 531, 533, 212 S.E.2d 85, 86 (1975) (citations omitted). Based upon the circuit court's order and the long history of this dispute, which includes numerous findings of fact and conclusions of law by federal courts, the circuit court, and this Court, the circuit court's order satisfied Rule 52.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** May 26, 2020

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

**NOT PARTICIPATING:**

Justice Margaret L. Workman

9