IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2016 Term

No. 15-0600

**FILED**

**June 1, 2016**

released at 3:00 p.m.
RORY L. PERRY, II CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

JEFFREY N. EVANS, individually and in his capacity as
an employee or agent of AMERIPRISE FINANCIAL SERVICES, INC.,
AMERIPRISE FINANCIAL SERVICES, INC., KRISTINA NICHOLLS,
individually, and STEPHEN BAYLES, individually,
Defendants Below, Petitioners

v.

DEBRA K. BAYLES,
Plaintiff Below, Respondent

Appeal from the Circuit Court of Marshall County
Honorable David W. Hummel, Jr., Judge
Civil Action No. 14-C-139

REVERSED AND REMANDED

Submitted: April 19, 2016
Filed: June 1, 2016

Edward P. Tiffey, Esq.
Tiffey Law Practice, PLLC
Charleston, West Virginia
Counsel for Petitioners
Jeffrey N. Evans and Ameriprise
Financial Services, Inc.

Herman D. Lantz, Esq.
Lantz Law Offices
Moundsville, West Virginia
Counsel for Respondent

Deva A. Solomon, Esq.
Steptoe & Johnson, PLLC
Morgantown, West Virginia
        and
Ancil G. Ramey, Esq.
Steptoe & Johnson, PLLC
Huntington, West Virginia
Counsel for Petitioners Kristina
Nicholls and Stephen Bayles

JUSTICE LOUGHRY delivered the Opinion of the Court.

**SYLLABUS BY THE COURT**

1. "An order denying a motion to compel arbitration is an interlocutory ruling which is subject to immediate appeal under the collateral order doctrine." Syl. Pt. 1, *Credit Acceptance Corp. v. Front*, 231 W.Va. 518, 745 S.E.2d 556 (2013).

2. "In the law of contracts, parties may incorporate by reference separate writings together into one agreement. However, a general reference in one writing to another document is not sufficient to incorporate that other document into a final agreement. To uphold the validity of terms in a document incorporated by reference, (1) the writing must make a clear reference to the other document so that the parties' assent to the reference is unmistakable; (2) the writing must describe the other document in such terms that its identity may be ascertained beyond doubt; and (3) it must be certain that the parties to the agreement had knowledge of and assented to the incorporated document so that the incorporation will not result in surprise or hardship." Syl. Pt. 2, *State ex rel. U-Haul Co. of W. Va. v. Zakaib*, 232 W.Va. 432, 752 S.E.2d 586 (2013).

LOUGHRY, Justice:

The petitioners, Ameriprise Financial Services, Inc. ("Ameriprise"), Jeffrey N. Evans ("Mr. Evans"), Kristina Nicholls, and Stephen Bayles (collectively referred to as "the petitioners"), appeal the Circuit Court of Marshall County's May 19, 2015, order denying their motion to dismiss and to compel arbitration. Relying upon the doctrine of *contra proferentem*,[1] the circuit court found the absence of a signature on a brokerage agreement created an ambiguity that invalidated the arbitration clause set forth therein. Upon our careful review of the briefs, the arguments of counsel, the record submitted, and the applicable law, we reverse the circuit court's order and remand this action to the circuit court for further proceedings consistent with this opinion.

## I. Facts and Procedural Background

In 2012, William Bayles ("Mr. Bayles" or "the decedent"), the late husband of the respondent, Debra Bayles ("Mrs. Bayles"), rolled over his 401(k) retirement account into individual retirement accounts with Ameriprise. Through Mr. Evans' assistance, Mr. Bayles signed a Brokerage Individual Retirement Account (IRA) Application ("IRA Application"),

---

[1]*See Amerix Corp. v. Jones*, 457 F.App'x. 287, 292 n.3 (4th Cir. 2011) ("The doctrine of *contra proferentem* provides that ambiguous contractual provisions must be construed against the interests of the drafter.").

1

bearing account number 264133,[2] on June 21, 2012.  Soon thereafter, Mr. Evans again

assisted Mr. Bayles when he signed an Active Portfolios Application-IRA Account

Application ("Portfolios Application"), bearing account number 961133, on September 5,

2012.[3]  The first page of each application states that a copy of the related client agreement

("Brokerage Agreement") must be provided to the client.  In addition, the IRA Application

contains a paragraph stating:

> You acknowledge that you have received and read the
> *Ameriprise* Brokerage Client Agreement ("Agreement") and
> agree to abide by its terms and conditions as currently in effect
> or as they may be amended from time to time. You hereby
> consent to all these terms and conditions with full knowledge
> and understanding of the information contained in the
> Agreement. This brokerage account is governed by a predispute
> arbitration clause which is found on Section 26, page 3 of the
> Agreement. You acknowledge receipt of the predispute
> arbitration clause.[4]

(Footnote added.).   Similar language is provided in the Portfolios Application:

> You acknowledge that you have received and read the
> *Ameriprise Active Portfolios* Client Agreement (version K,
> dated 03/12), the *Ameriprise* Managed Accounts Client
> Disclosure Brochure and the *Ameriprise* Brokerage Client

---

[2]For purposes of our discussion, we will use the last six digits of the subject Ameriprise accounts, as reflected in the parties' respective briefs.

[3]The Portfolios account was opened with a sum certain from IRA account number 264133.

[4]The IRA Application also contains language stating: "[p]lease read . . . all related documents carefully, then sign and date below."  Directly above Mr. Bayles' signature on this application are the words: "By entering your name below, you signify that you have read, met, and agreed to all terms and conditions above."

2

Agreement, which is hereby incorporated by reference, and agree to abide by the terms and conditions as currently in effect or as they may be amended from time to time. You hereby consent to all these terms and conditions with full knowledge and understanding of the information contained in them. This account is governed by a predispute arbitration provision which is found in Section 25, Page 9 of the *Active Portfolios* Client Agreement and Section 26, Page 3 of the Brokerage Client Agreement. You acknowledge receipt of the predispute arbitration provision.[5]

(Footnote added.). The arbitration clause in each Brokerage Agreement begins with the words: "**This agreement contains a predispute arbitration clause. By signing this Agreement the parties agree as follows** . . . ." (Bold in original.).[6]

Mr. Bayles died on March 26, 2013.[7] Although Mrs. Bayles believed she was the intended beneficiary on the Portfolios account, Ameriprise's documentation, including a change of beneficiary form, indicated that Kristina Nicholls and Stephen Bayles, the

---

[5]The Portfolios Application also provides "[b]y signing this Application . . . you agree to all terms and conditions stated in this Application and in the related documents provided to you[.]" Similar to the IRA Application, directly above Mr. Bayles' signature on the Portfolios Application are the words: "By signing this Application, you acknowledge that you have received, read and agree to the terms and conditions of the *Active Portfolios* Client Agreement[.]"

[6]For ease of reference, the "predispute arbitration clause" will be referred to as the "arbitration clause."

[7]Mrs. Bayles was named the administratrix of her late husband's estate.

decedent's children, were the designated primary beneficiaries in equal shares on both the

IRA and the Portfolios accounts.

On September 5, 2014, Mrs. Bayles filed a complaint in her individual capacity

challenging Ameriprise's payout of the proceeds in the Portfolio account (number 961133)

to the decedent's children. She asserted claims against Ameriprise and its agent, Mr. Evans,

related to both accounts, including negligence, detrimental reliance, respondeat superior, and

breach of a contract.[8] She also asserted an unjust enrichment claim against the decedent's

children in relation to their receipt of the proceeds from the Portfolios account.

On November 17, 2014, the petitioners filed a motion to dismiss and compel

arbitration. The circuit court held a hearing on the motion on February 27, 2015. On May

19, 2015, the circuit court entered its order denying the motion.

The circuit court's order only addressed the IRA account (number 264133).

The circuit court found the IRA Application for this account referenced the Brokerage

Agreement, which included an arbitration clause that stated, in part: "By signing this

---

[8]Mrs. Bayles argued below, as well as before this Court, that these accounts are not a predicate for her claims of negligence and detrimental reliance against Mr. Evans, whom she alleges made misrepresentations for the purpose of inducing her to sign a spousal consent for the rollover of her husband's 401(k) account.

4

Agreement, the parties agree as follows . . . ."[9]  Observing the IRA Application was signed, but the Brokerage Agreement was not, the circuit court found "the absence of a signature within the Brokerage Agreement create[d] an ambiguity to be construed against the drafter, Defendant Ameriprise Financial Services, Inc. . . . under the doctrine of *contra proferentem*."[10]  Based on this finding, the circuit court ruled "as a matter of law that the decedent [Mr. Bayles] did not enter into a valid arbitration agreement with Ameriprise[.]" This appeal followed.

## II.  Standard of Review

The circuit court's denial of the petitioners' motion to dismiss and to compel arbitration is subject to an immediate appeal.  In *Credit Acceptance Corp. v. Front*, 231 W.Va. 518, 745 S.E.2d 556 (2013), we held: "An order denying a motion to compel arbitration is an interlocutory ruling which is subject to immediate appeal under the collateral order doctrine."  231 W.Va. at 519, 745 S.E.2d at 557, syl. pt. 1.  Further,

> [w]hen an appeal from an order denying a motion dismiss is properly before this Court, our review is *de novo*. *See, e.g.*, Syl. pt. 4, *Ewing* [v. *Bd. of Educ.*], 202 W.Va. 228, 503 S.E.2d 541 [(1998)] ("When a party, as part of an appeal from a final judgment, assigns as error a circuit court's denial of a motion to

---

[9]The arbitration clause is several paragraphs in length.  We have not set forth the content of the arbitration provisions because they are irrelevant to our analysis of the circuit court's narrow ruling in this matter.

[10]*See supra* note 1.

dismiss, the circuit court's disposition of the motion to dismiss
will be reviewed *de novo*.").

*Credit Acceptance*, 231 W.Va. at 525, 745 S.E.2d at 563. To the extent our analysis requires us to consider the circuit court's interpretation of a contract, our review is also plenary. *Zimmerer v. Romano*, 223 W.Va. 769, 777, 679 S.E.2d 601, 609 (2009) ("[W]e apply a *de novo* standard of review to the circuit court's interpretation of the contract.") (citation omitted). Accordingly, we proceed with our de novo review of the circuit court's ruling in this matter.

## III. Discussion

The sole issue before this Court is whether the circuit court erred by invalidating the arbitration clause in the Brokerage Agreement associated with the IRA account (number 264133). The circuit court found the absence of a signature on the Brokerage Agreement created an ambiguity to be construed against the drafter, Ameriprise, under the doctrine of *contra proferentem*. The petitioners assert that because the decedent signed the IRA Application, which incorporated the Brokerage Agreement by reference, the absence of a signature on the Brokerage Agreement did not create an ambiguity under the doctrine of *contra proferentem*. Reyling upon language in the arbitration clause expressly contemplating a signature on the Brokerage Agreement, Mrs. Bayles argues the absence of her late husband's signature on that agreement demonstrates the parties did not intend to be

6

bound by the arbitration clause and creates an ambiguity that must be construed against

Ameriprise.

We begin our analysis by observing that the validity of an arbitration agreement

is a matter of state contract law. *See State ex rel. Clites v. Clawges*, 224 W.Va. 299, 305, 685

S.E.2d 693, 699 (2009) ("[I]ssue of whether an arbitration agreement is a *valid* contract is

a matter of state contract law[.]"). Recently, in *State ex rel. U-Haul Co. v. Zakaib*, 232

W.Va. 432, 752 S.E.2d 586 (2013), we applied contract principles in addressing the denial

of a motion to compel arbitration. In analyzing U-Haul's argument that a "single contract

may be comprised of separate documents,"[11] we recognized that "'[a] majority of courts hold

that for the terms of one document to be incorporated by reference into a writing executed

by the parties, 'the reference must be clear and unequivocal, the reference must be called to

the attention of the other party and he must consent thereto[.]'" *Id.* at 438, 442, 752 S.E.2d

at 593, 596 (citation omitted). Relevant to the matter currently before us, we held in *U-Haul*

that

> [i]n the law of contracts, parties may incorporate by reference separate writings together into one agreement. However, a general reference in one writing to another document is not sufficient to incorporate that other document into a final agreement. To uphold the validity of terms in a document incorporated by reference, (1) the writing must make a clear

---

[11]U-Haul maintained the circuit court had erred by refusing to acknowledge that an Addendum containing an arbitration clause and a Rental Contract formed the parties' entire agreement.

7

reference to the other document so that the parties' assent to the reference is unmistakable; (2) the writing must describe the other document in such terms that its identity may be ascertained beyond doubt; and (3) it must be certain that the parties to the agreement had knowledge of and assented to the incorporated document so that the incorporation will not result in surprise or hardship.

*Id.* at 435, 752 S.E.2 at 589, syl. pt. 2. Based on our consideration of the record before us, we find each of these factors is readily satisfied.

The IRA Application indisputably made multiple, clear references to the Brokerage Agreement, as described in the facts set forth above. Those express references described the Brokerage Agreement in such terms as to leave no doubt as to its identity. Further, the appendix record contains an affidavit executed by Mr. Evans in which he states that he called to the decedent's attention the IRA Application's specific reference to the predispute arbitration clause contained in the Brokerage Agreement; that he explained the arbitration process to the decedent; and that he provided a complete copy of the Brokerage Agreement to the decedent.[12] Moreover, there has been no claim of surprise or hardship. In short, under the *U-Haul* factors, we find the IRA Application and the Brokerage Agreement constitute a single, unified document.

---

[12]*See* Syl. Pt. 4, *American States Ins. Co. v. Surbaugh,* 231 W.Va. 288, 745 S.E.2d 179 (2013) ("'A party to a contract has a duty to read the instrument.' Syllabus point 5, *Soliva v. Shand, Morahan & Co., Inc.*, 176 W.Va. 430, 345 S.E.2d 33 (1986).").

We now turn to the issue of whether the absence of a separate signature on the Brokerage Agreement creates an ambiguity that invalidates the arbitration clause set forth therein. As we recognized in *U-Haul*, "courts generally 'allow an unsigned document to be incorporated into a signed document as long as the signed paper specifically refers to the unsigned document and the unsigned document is available to the parties.'" 232 W.Va. at 442-43, 752 S.E.2d at 596-97 (citation omitted). Courts in other jurisdictions are in agreement. *See, e.g.*, *Innovation Ventures, L.L.C. v. Custom Nutrition Labs., L.L.C.*, No. 12-13850, 2015 WL 5679879, at *17 (E.D. Mich. Sept. 28, 2015) ("Incorporation by reference requires that the signed document 'plainly refer' to the unsigned document. . . . [T]he signed document's language 'must show the parties intended for the other document to become part of the agreement.'") (citations omitted); *Mohmed v. Certified Oil Corp.*, 37 N.E.3d 814 (Ohio Ct. App. 2015) (finding plaintiff bound by terms of unsigned addendum expressly incorporated by reference into signed supply agreement); *Monkey Island Dev. Auth. v. Staten*, 76 P.3d 84 (Okla. Civ. App. 2003) (finding lack of separate signature on separate document incorporated by reference into signed document did not nullify nor make ineffectual other document); *Venture Cotton Coop. v. Freeman*, __ S.W.3d __, 2015 WL 1967251, at *9 (Tex. App. Apr. 30, 2015) ("It is well settled that an unsigned document may be incorporated by reference in the signed document.").

Following *U-Haul*, we had the opportunity to address the lack of a signature on an incorporated document in *Navient Solutions, Inc. v. Robinette*, No. 14-1215, 2015 WL 6756859 (W.Va. Nov. 4, 2015) (memorandum decision).[13] Ms. Robinette had signed multiple student loan applications with Navient, each of which incorporated by reference an unsigned promissory note containing an arbitration clause. In denying Navient's motion seeking to compel arbitration, the circuit court found that Ms. Robinette had not agreed to the arbitration clause contained in the separate, unsigned promissory note. Specifically, the Court found that the loan application had not alerted Ms. Robinette to the fact that the promissory note contained an arbitration agreement.[14] In reversing the circuit court's ruling, we found there was a single, unified contract based on references to the promissory note in the signed loan applications. *Id.* at *4. We observed that by signing the loan application, Ms. Robinette declared she had read and expressly agreed to be bound by the terms of the promissory note accompanying her application, leaving no doubt that the promissory note was a critical part of the executed transaction. *Id.* Similarly, in the case at bar, the decedent

---

[13]Although our opinion in *Navient* had not issued at the time the parties filed their initial briefs, the petitioners relied upon *Navient* in their reply brief. *See Caperton v. A.T. Massey Coal Co., Inc.*, 225 W.Va. 128, 156, 690 S.E.2d 322, 350 (2009) ("The Supreme Court of Appeals of West Virginia, like all courts in the country, adheres to the common law principle that, '[a]s a general rule, judicial decisions are retroactive in the sense that they apply both to the parties in the case before the court and to all other parties in pending cases.'") (citation omitted).

[14]Unlike the facts in *Navient*, here, the IRA Application not only stated that the incorporated Brokerage Agreement contained an arbitration clause, but it also provided a specific reference to precisely where in the Brokerage Agreement the arbitration clause could be found.

signed the IRA Application, expressly acknowledging he had received and read the Brokerage Agreement with its arbitration clause; had consented to all of its terms and conditions "with full knowledge and understanding of the information" contained in the Agreement; and had received the predispute arbitration clause.

Based on the foregoing analysis, we find the circuit court erred by invalidating the arbitration clause based on the absence of a signature on the Brokerage Agreement for the IRA account (number 264133). Although the petitioners have also asked this Court to enter an order enforcing the arbitration clause, there are unresolved issues that preclude us from doing so, including whether the arbitration clause is unconscionable[15] and whether any or all of Mrs. Bayles' claims "fall within the substantive scope of that arbitration agreement."[16] Moreover, other than to acknowledge its existence, the circuit court has not made any findings or rulings regarding the Portfolios account (number 961133). This is

---

[15]*See Kirby v. Lion Enterprises, Inc.*, 233 W.Va. 159, 166, 756 S.E.2d 493, 500 (2014) (finding contract containing arbitration provision was valid and remanding case to circuit court for development of record on issue of procedural and substantive unconscionability that "necessarily involves a fact-intensive analysis into a range of factors.").

[16] *See* Syl. Pt. 2, in part, *State ex rel. TD Ameritrade, Inc. v. Kaufman*, 225 W.Va. 250, 692 S.E.2d 293 (2010) ("When a trial court is required to rule upon a motion to compel arbitration . . . the authority of the trial court is limited to determining the threshold issues of (1) whether a valid arbitration agreement exists between the parties; and (2) whether the claims averred by the plaintiff fall within the substantive scope of that arbitration agreement.").

particularly problematic since the focus of Mrs. Bayles' complaint is the Portfolios account, which appears to have held the bulk of the decedent's money at Ameriprise.[17]

As we explained in *In re Michael Ray T.*, 206 W.Va. 434, 525 S.E.2d 315 (1999),

> we will not consider, for the first time on appeal, a matter that has not been determined by the lower court from which the appeal has been taken. . . . Therefore, "'"[i]n the exercise of its appellate jurisdiction, this Court will not decide nonjurisdictional questions which were not considered and decided by the court from which the appeal has been taken." Syllabus Point 1, *Mowery v. Hitt*, 155 W.Va. 103 [, 181 S.E.2d 334] (1971).' Syl. pt. 1, *Shackleford v. Catlett*, 161 W.Va. 568, 244 S.E.2d 327 (1978)." Syl. pt. 3, *Voelker v. Frederick Bus. Properties Co.*, 195 W.Va. 246, 465 S.E.2d 246 (1995). *See also* Syl. pt. 2, *Sands v. Security Trust Co.*, 143 W.Va. 522, 102 S.E.2d 733 (1958) (same).

*Michael Ray T.*, 206 W.Va. at 444, 525 S.E.2d at 325. Accordingly, all outstanding issues in this matter are entrusted to the circuit court's consideration and ruling on remand.

---

[17]The parties have offered no explanation as to why the circuit court's order is restricted to the IRA account (number 264133). Regardless,"[i]t is a paramount principle of jurisprudence that a court speaks only through its orders." *Legg v. Felinton,* 219 W.Va. 478, 483, 637 S.E.2d 576, 581 (2006). In this regard, we encourage precision, clarity, and thoroughness in future orders entered in this matter.

## IV. Conclusion

For the reasons set forth herein, the circuit court's May 19, 2015, order is reversed, and this action is remanded to the circuit court for further proceedings consistent with this opinion.

Reversed and Remanded.