**STATE OF WEST VIRGINIA**

**FILED**

**March 12, 2025**

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **L.J., I.J., A.J., and G.J.-1**

**Nos. 23-472 & 23-498** (Wood County 21-JA-228, 21-JA-229, 21-JA-230, 22-JA-225)

**MEMORANDUM DECISION**

In these consolidated abuse and neglect cases, petitioners, father G.J. and mother J.J.[1] (hereinafter "father" and "mother" or collectively "petitioners"), appeal the July 31, 2023 order of the Circuit Court of Wood County terminating their parental rights to their four children, L.J., I.J, A.J., and G.J.-1.[2] Petitioners contend that the circuit court erroneously shifted the burden of proof by requiring them to show that they eliminated the conditions that gave rise to the filing of the abuse and neglect petition. Petitioners also assert that the circuit court erred by not employing a less restrictive alternative to termination of their parental rights and instead finding that there was no reasonable likelihood that the conditions of abuse and neglect could be corrected in the near future. Having considered the parties' briefs, oral arguments, and the record on appeal, we find no substantial question of law and no prejudicial error. Accordingly, a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. Proc. 21(c).

---

[1] In Case No. 23-472, father appears by counsel Travis Sayre, Esq. In Case No. 23-498, mother appears by counsel Nancy L. McGhee, Esq. In both cases, Michael D. Farnsworth, Jr., Esq., is the guardian ad litem and Attorney General John B. McCuskey, Esq., and Lee Niezgoda, Esq., Assistant Attorney General, represent the West Virginia Department of Human Services. Additionally, pursuant to West Virginia Code § 5F-2-1a (2024), the agency formerly known as the West Virginia Department of Health and Human Resources was terminated. It is now three separate agencies: the Department of Health Facilities, the Department of Health, and the Department of Human Services. *See* W. Va. Code § 5F-1-2 (2024). For purposes of abuse and neglect appeals, the agency is now the Department of Human Services ("DHS"). Because a new attorney general took office while this appeal was pending, his name has been substituted as counsel for DHS.

[2] We use initials instead of full names to protect the identities of the juveniles involved in this case. *See* W. Va. R. App. Proc. 40(e). Because one of the children and father have the same initials, we have added a numerical designation to the child's initials.

1

On October 27, 2021, respondent DHS filed an abuse and neglect petition alleging that father and mother engaged in domestic violence while L.J., I.J., and A.J. were present in the home and that petitioners had been uncooperative with DHS's efforts to ensure the safety of the children after the domestic violence was disclosed. The petition also noted that petitioners had two prior abuse and neglect cases in Boone County.[3] At an adjudicatory hearing in January 2022, petitioners stipulated to engaging in domestic violence while the children were present. Both were granted six-month improvement periods.

At a May 6, 2022, review hearing, the circuit court granted DHS's motion to terminate father's improvement period based on evidence that father had repeatedly tested positive for controlled substances, mother had filed a domestic violence petition against him, and he not been attending parenting services. At that time, DHS learned that mother was pregnant with petitioners' fourth child, and mother admitted to a DHS worker that she had used methamphetamine. Mother also told the worker about the domestic violence petition she had filed and indicated that she was going to divorce father. The circuit court ordered mother to attend inpatient treatment as an additional condition of her improvement period. Thereafter, mother completed a twenty-eight-day treatment program, but subsequently reunited with father.

A disposition hearing was held for father on July 13, 2022. He was granted a post-dispositional improvement period upon agreement that he would complete a long-term inpatient treatment program. Although DHS sought to schedule mother's case for disposition, the circuit court instead granted her a three-month extension of her post-adjudicatory improvement period. Both petitioners were ordered to attend Narcotics Anonymous and Alcoholics Anonymous meetings as an additional condition of their improvement periods.

In late July 2022, mother gave birth to G.J.-1. She tested positive for marijuana at the time of the child's birth. DHS then filed an amended petition adding G.J.-1 to the proceedings and alleging that petitioners were engaging in substance abuse that affected their ability to parent their children. Petitioners again stipulated to the allegations in the petition and were granted improvement periods with respect to G.J.-1 to run concurrent with their improvement periods for the other children.

Father relapsed into drug use again in August and November 2022. At a December 16, 2022, review hearing, DHS reported that while mother was doing well in her improvement period, she was residing with father when he relapsed. Although DHS sought to terminate mother's improvement period, the circuit court denied its motion and granted

---

[3] The Boone County cases were based on allegations of domestic violence and substance abuse. After completing improvement periods, the children were returned to petitioners' custody.

mother's motion for increased visitation. Father's improvement period was terminated, but he was permitted to continue receiving services.

At a February 13, 2023, review hearing, DHS reported that when a CPS worker asked mother about choosing between the children and their father, mother indicated that she could not care for the children on her own. At an April 17, 2023, review hearing, the circuit court set the matter for disposition upon the recommendation of DHS. By that time, mother had been discharged from individual therapy services because of noncompliance.

Disposition hearings were held in June and July 2023. Evidence was presented by DHS showing that father missed several drugs screens in March, April, and May 2023, had an abnormal drug screen on June 6, 2023, and tested positive for marijuana on July 15, 2023. With respect to mother, DHS presented evidence that she had missed two drug screens in March 2023 and two in April 2023. DHS further presented evidence of the extensive services provided to petitioners over the course of the abuse and neglect proceeding. While DHS acknowledged that petitioners had made some improvements during the case, it argued that petitioners' parental rights should be terminated because they were continuing to struggle with sobriety.

Mother testified that she stipulated to the abuse and neglect allegations so that she could obtain an improvement period and that she believed she and father were "really good parents." Mother blamed her drug use on the removal of her children, which she believed was based on "a lie." Father testified that he had completed a thirty-day inpatient program, but that he did not complete the intensive outpatient program because he "wasn't required to." He admitted that it was "possible" that he had missed some drug screens and claimed that his positive screen for marijuana on the day of the initial disposition hearing was a "false positive," but did not present any evidence to support that contention. Petitioners' parenting provider and their visitation supervisor each testified that the family should be reunited. However, when cross-examined by DHS, they appeared to be unaware of petitioners' missed drug screens and indicated they were relying upon petitioners' self-reports of sobriety.

On July 31, 2023, the circuit court entered an order terminating petitioners' parental rights but allowing therapeutic visits with the children to continue until permanency is achieved. The circuit court found that there was no reasonable likelihood that the conditions of abuse and neglect could be corrected in the near future because, despite the extensive services provided by DHS during three separate abuse and neglect cases, petitioners were still unable to provide a safe and stable home for their children. The circuit court further found that the children needed permanency, noting that the oldest child had spent a cumulative total of forty-five months in foster care while the youngest child had been in foster care since his birth nineteen months ago. Upon entry of the circuit court's final order, petitioners filed their appeals with this Court.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Although petitioners filed separate appeals, they asserted the same assignments of error.[4] We address each assignment of error, in turn, below.

Petitioners first contend that the circuit court erroneously shifted the burden of proof. In support of this contention, petitioners point to the circuit court's comment during the final disposition hearing that "it is the burden of the parents to show that they have eliminated the causes of why the petition was brought" and ask us to find that the circuit court "plainly erred" because petitioners did not object during the proceeding below. Generally, the failure to assert an objection results in "the imposition of a procedural bar to an appeal of that issue." *State v Miller*, 194 W. Va. 3, 18, 459 S.E.2d 114, 129 (1995) (additional quotations and citation omitted). However, "[t]he 'plain error' doctrine grants appellate courts, in the interest of justice, the authority to notice error to which no objection has been made." *Id.*[5]

"To trigger application of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." *Miller*, 194 W. Va. at 7, 459 S.E.2d at 118, syl. pt. 7. Upon review of the record, we find that there was no shifting of the burden of proof, and thus, no error occurred. The comment at issue was made at the end of the disposition hearing when the circuit court was recounting the evidence pertaining to petitioners' participation in their improvement periods. As this Court has held:

> At the conclusion of the improvement period, the court shall review the performance of the parents in attempting to attain the goals of the improvement period and shall, in the court's discretion, determine whether the conditions of the improvement period have been satisfied and whether sufficient improvement has been made in the context of all the circumstances of the case to justify the return of the child.

Syl. Pt. 6, *In the Interest of Carlita B.*, 185 W. Va. 613, 408 S.E.2d 365 (1991). In reviewing petitioners' performance during their improvement periods, the circuit court stated:

---

[4] These cases were consolidated for oral argument, consideration, and decision by order of this Court entered on September 9, 2024.

[5] Although usually applied in the criminal context, this Court has noticed plain error in abuse and neglect cases. *See In re K.L.*, 233 W. Va. 547, 552 n.6, 759 S.E.2d 778, 783 n. 6 (2014) (recognizing that plain error is not exclusive to criminal cases).

So, what kind of stability have we had for these kids and – and we did give them, the parents, chance after chance over the past 21 months or almost 21 months, in this case. They've done a lot, they've done a lot of the things that have been asked, there has been some improvement, but the question is are we to the point where the child would be safe and in a permanent environment and in a stable environment. I think the key word in this case is stability. But it is the burden of the parents to show that they have eliminated the causes for why the petition was brought, and even with the improvements the Court cannot say that the children would be in a safe, permanent, and stable environment. We've had the relapse by the father, and the missed drug screens, and as pointed out by [the GAL], a full year into the case, [father] still tested positive for—for meth.

When the comment is considered in context, it is clear that the circuit court was referring to petitioners' obligation to participate and comply with the terms of their improvement periods, which is distinct from the burden the DHS has throughout the proceedings to prove the conditions of abuse and neglect by clear and convincing evidence.

As this Court has held, "[t]he standard of proof required to support a court order limiting or terminating parental rights to the custody of minor children is clear, cogent and convincing proof." Syl. pt. 6, *In re* Willis, 157 W. Va. 225, 207 S.E.2d 129 (1973); *see also* Syl. Pt. 1, in part, *In re S.C.*, 168 W. Va. 366, 284 S.E.2d 867 (1981) ("W.Va.Code, [49-4-601(i) (2019]), requires the [DHS], in a child abuse or neglect case, to prove "conditions existing at the time of the filing of the petition . . . by clear and convincing proof."). Without question, "[e]ven when an improvement period is granted, the burden of proof in a child abuse and neglect case does not shift from the [DHS] to the parent, guardian or custodian of the child. It remains upon the [DHS] throughout the proceedings." *In re S.C.*, 168 W. Va. at 366, 284 S.E.2d at 869, syl. pt. 2. However, separate from DHS's burden of proof, is the duty that a parent has to participate and comply with the terms of the improvement period. As West Virginia Code § 49-4-610(4) (2015) provides, in pertinent part:

> *Responsibilities of the respondent receiving improvement period. --*
>
> (A) When any improvement period is granted to a respondent pursuant to this section, *the respondent shall be responsible for the initiation and completion of all terms of the improvement period.* The court may order the state department to pay expenses associated with the services provided during the

5

improvement period when the respondent has demonstrated that he or she is unable to bear the expenses.

(Emphasis added). Indeed, "a parent's participation in an improvement period is a clear indicator of the parent's future potential for success and willingness to make the necessary changes to become a fit and suitable parent." *In re Kristin Y.*, 227 W. Va. 558, 571, 712 S.E.2d 55, 68 (2011). While the best interests of the child(ren) is the controlling standard in the dispositional decision, the level of a parent's compliance with the terms of the improvement period is a factor to be considered. Syl. Pt. 4, *In re B.H.*, 233 W. Va. 57, 754 S.E.2d 743 (2014). Having carefully reviewed the record, and in particular, the disposition hearing transcripts, we find that the circuit court's comment was directed at petitioners' obligation to show compliance with the terms of their improvement periods. Despite the circuit court's ill-advised comment, there was no improper shifting of the burden of proof to petitioners. Accordingly, we find no merit to this assignment of error.

Next, petitioners assert that the circuit court erred by not imposing a less restrictive alternative to termination of their parental rights, and instead, finding that there was no reasonable likelihood that the conditions of abuse and neglect could be corrected in the near future. Petitioners argue that the children should have been returned to their custody because their visitation and parenting providers testified that the family should be reunited with continued services. However, DHS elicited testimony from the providers during the disposition hearings that showed that they were unaware of petitioners recent missed drug screens and father's relapses into drug use. Based upon that testimony, the circuit court found that the providers were unaware of the totality of the circumstances and were merely relying upon petitioners' self-reports of sobriety. The circuit court further found that any further extension of petitioners' improvement periods was not an option given that services had already been provided for twenty-one months. As this Court has observed, "West Virginia Code § 49-4-610(6) (eff. 2015) authorizes only *one* extension of a post-adjudicatory improvement period." Syl. Pt. 5, *State ex rel. P.G.-1 v. Wilson*, 247 W. Va. 235, 878 S.E.2d 730 (2021) (emphasis in original); *see also* W. Va. Code § 49-4-605 (2018) (requiring DHS to seek termination of parental rights when child has been "in foster care for 15 of the most recent 22 months"). The circuit court found that despite having been afforded extensive improvement periods, petitioners had not complied with the terms of their case plans such that they were unable to fully remedy the deficiencies that the led to the filing of the petition and could not demonstrate that they were capable of providing a safe, permanent, and stable environment for their children.

The circuit court also observed that over the course of petitioners' three abuse and neglect cases, the children had spent significant periods of time in foster care. Petitioners have argued that because their prior cases were resolved, they should not have been considered by the circuit court. However, as set forth above, the controlling standard for disposition is the best interests of the child. As this Court has often reiterated, "'"[i]n a contest involving the custody of an infant the welfare of the child is the polar star by which

6

the discretion of the court will be guided.' Syl. pt. 1, *State ex rel. Cash v. Lively*, 155 W.Va. 801, 187 S.E.2d 601 (1972)." Syllabus Point 4, *State ex rel. David Allen B. v. Sommerville*, 194 W.Va. 86, 459 S.E.2d 363 (1995).' Syl. Pt. 2, *In the Interest of Kaitlyn P.*, 225 W.Va. 123, 690 S.E.2d 131 (2010)." Syl. Pt. 3, *In re Timber M.*, 231 W. Va. 44, 743 S.E.2d 352 (2013). Therefore, the circuit court's consideration of the aggregate amount of time the children had spent in foster care and their need for permanency and stability was not error.

Syllabus point five of *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011), holds:

> "Termination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

West Virginia Code § 49-4-604(d) (2020) defines "[n]o reasonable likelihood that conditions of neglect or abuse can be substantially corrected" as "based upon the evidence before the court, the abusing adult or adults have demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help." Such conditions exist when "[t]he abusing parent or parents have not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child[.]" W. Va. Code § 49-4-604(d)(3). Having found that petitioners had not sufficiently complied with the terms of their improvement periods, the circuit court did not err in concluding that there was no reasonable likelihood that petitioners could correct the conditions of abuse and neglect in the near future. Accordingly, we find no merit to this assignment of error.

For the reasons set forth above, the July 31, 2023 order of the Circuit Court of Wood County terminating petitioners' parental rights is affirmed.

Affirmed.

**ISSUED:** March 12, 2025

7

**CONCURRED IN BY:**

Justice Elizabeth D. Walker
Justice Tim Armstead
Justice C. Haley Bunn

**DISSENTING:**

Chief Justice William R. Wooton
Justice Charles S. Trump IV


**WOOTON, Chief Justice, with whom Justice Trump joins, dissenting:**

I respectfully dissent, as I cannot pretend that the circuit court did not actually mean what it so clearly said: that "it is the burden of the parents to show that they have eliminated the causes for why the petition was brought." This statement was, and is, clearly and unequivocally erroneous. *See* Syl. Pt. 3, in part, *In re C.S.*, 247 W. Va. 212, 875 S.E.2d 352 (2022) ("[T]he burden of proof in a child neglect or abuse case does not shift from the State Department of [Health and Human Resources] to the parent, guardian or custodian of the child. It remains upon the State Department of [Health and Human Resources] throughout the proceedings."); Syl. Pt. 2, *In re S.C.*, 168 W. Va. 366, 284 S.E.2d 867 (1981) ("Even when an improvement period is granted, the burden of proof in a child neglect or abuse case does not shift from the [DHS] to the parent, guardian or custodian of the child. It remains upon the [DHS] throughout the proceedings.").

Indeed, the court's remarks immediately following this statement demonstrate that its statement was not a momentary slip of the tongue, or nothing more than what the majority characterizes as an "ill-advised comment." In summing up the evidence, it is clear that the court did indeed shift the burden of proof to the parents. The court mentioned the respondent parents' missed drug screens and the father's relapses. It then acknowledged the testimony of the visitation workers, both of whom recommended reunification of the family, the fact that the children had a bond with their parents, and the evidence showing that the parents had put forward a good effort. The court concluded that "I don't believe it's been shown *that they [the parents] can show* that the deficiencies that led to the filing of the petition have been fully remedied." (Emphasis added).

The Department of Human Services ("DHS") argues that "[a] court of record speaks only through its orders,"[6] not through its oral pronouncements, but the circuit court's

_____

[6] *State ex rel. Erlewine v. Thompson*, 156 W. Va. 714, 718, 207 S.E.2d 105, 107 (1973). We have deemed this a "paramount principle of jurisprudence." *See Evans v. Bayles*, 237 W. Va. 269, 275 n. 17, 787 S.E.2d 540, 546 n.17 (2016).

dispositional order in this case demonstrates that the circuit court continued to place the burden of proof on the parents. In this regard, the order states that "it has not been shown that the deficiencies that led to the filing of this petition have been remedied." That is not the test in an abuse and neglect case; respondent parents are not required to "show" anything. Rather,

> "'[t]ermination of parental rights . . . is authorized only [u]pon a finding that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future, and when necessary for the welfare of the child.' W.Va. Code § [49-4-604(c)(6)]. The State must produce clear and convincing evidence to support this finding before the court may sever the custodial rights of the natural parents.[7] *State v. Carl B.*, [171] W. Va. [774], 301 S.E.2d 864 (1983); *In re Willis*, 157 W. Va. 225, 207 S.E.2d 129 (1973)."

*In re D.R.*, No. 22-0348, 2023 WL 1798623, at \*2 (W. Va. Feb. 7, 2023) (memorandum decision) (citing *State v. C.N.S.*, 173 W. Va. 651, 656, 319 S.E.2d 775, 780 (1984)).

Additionally, neither in its oral pronouncements nor in its written order did the court acknowledge that DHS's evidence to support termination of parental rights must be clear and convincing, *id.*, and it is apparent from a review of the record that the court did not employ a clear and convincing standard. Rather, the court employed a "totality of the evidence" standard, one which applies to this Court' review of a circuit court's grant or denial of summary judgment:

> Summary judgment is appropriate if, from the totality of the evidence presented, the record could not lead a rational trier of fact to find for the nonmoving party, such as *where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove*.

Syl. Pt. 2, *Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 459 S.E.2d 329 (1995) (emphasis added).[8] Consistent with this standard for determining whether summary judgment is appropriate – a standard which is clearly inapplicable in an abuse and neglect case – the

---

[7] *See infra*.

[8] We have also applied the "totality of the evidence standard" in reviewing whether an administrative tribunal properly weighed all relevant evidence in determining whether it was established, by a preponderance of the evidence, that a driver operated his or her vehicle under the influence of alcohol or drugs. *See Debord v. Frazier*, No. 19-0351, 2021 WL 1110020, at \*\*2, 3 (W. Va. Mar. 23, 2021) (memorandum decision).

circuit court found that it was the respondent parents' burden to prove "that the deficiencies that led to the filing of this petition have been remedied," and that they had failed to make a sufficient showing on this point.

My concern here is not merely academic, because I believe that DHS in fact failed to produce clear and convincing evidence to support a finding that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future." A fair reading of the dispositional transcripts shows that DHS's evidentiary focus was on the two earlier abuse and neglect proceedings, and that the circuit court relied heavily on this as well:

> The older children their entire life has been a history of instability based on the parents and their conduct. You say not to give weight to it being the third petition, but how can you not consider that, especially when we – we had testimony that the oldest child, [I.J.], has been out of the house for 45 months, I believe, and the other older two right behind that. These – the kids are now six, eight, nine, and almost one year old, so I point out [G.J.] has been out of the home basically all his life.

Under the facts and circumstances presented here, this was doubly unfair to the petitioners. First and foremost, "[p]ursuant to West Virginia Code § 49-4-601(i) (2019), a circuit court's finding that a child is an 'abused child' or a 'neglected child' must be based upon *the conditions existing at the time of the filing of the abuse and neglect petition*." Syl. Pt. 8, in part, *In re C.S.*, 247 W. Va. 212, 875 S.E.2d 350 (2022) (emphasis added). The conditions alleged in the petition were related solely to domestic violence perpetrated by father, and on the couples' failure to cooperate with DHS's efforts to set up interviews with the children – none of which was still at issue by the time the circuit court terminated the petitioners' parental rights based on (a) father's drug relapse months before disposition, which he attributed to depression and anxiety over the loss of his children, (b) father's and mother's missed drug screens, (c) how much time the children had spent in foster care, taking into account the two preceding abuse and neglect proceedings as well as the case at bar, and (d) the petitioners' failure to show – to the circuit court's satisfaction – that "the deficiencies that led to the filing of this petition have been remedied."

Second, it is important to note, regarding the previous abuse and neglect proceedings, that the initial proceeding was against petitioner father only and was based upon his slugfest with a neighbor in the front yard, and that the second proceeding was against petitioner mother only and was based on her drug use. Thus, the instant case was only the second proceeding against petitioner father and the second proceeding against petitioner mother, not the third.

This Court has repeatedly held that

10

> [i]n the law concerning custody of minor children, no rule is more firmly established than that the right of a natural parent to the custody of his or her infant child is paramount to that of any other person; it is a fundamental personal liberty protected and guaranteed by the Due Process Clauses of the West Virginia and United States Constitutions."

Syl. Pt. 1, *In Re Willis,* 157 W.Va. 225, 207 S.E.2d 129 (1973). Protection of fundamental rights requires scrupulous adherence to procedures mandated both by the Legislature and by this Court, including the requirement that the burden of proof "remains upon the [DHS] throughout the proceedings." *In re S.C.*, 168 W. Va. at 366, 284 S.E.2d at 869, Syl. Pt. 2, in part. Because I believe that in this case the circuit court erroneously shifted the burden of proof to the parents, thus depriving them of their due process rights, I respectfully dissent. I am authorized to state that Justice Trump joins in this dissent.